737 P.2d 74

Aurelia **MADRID**, Plaintiff-Petitioner,

v.

**UNIVERSITY OF CALIFORNIA, d/b/a Los Alamos National Laboratory, Employer, and Wausau Insurance Company and Royal Globe Insurance Company, Insurers, Defendants-Respondents.**

No. 16172.

Supreme Court of New Mexico.

March 18, 1987.

Rehearing Denied May 29, 1987.

George M. Scarborough, Santa Fe, Benny R. Naranjo, Albuquerque, for plaintiff-petitioner.

Montgomery & Andrews, Sarah M. Singleton, Walter J. Melendres, Santa Fe, Modrall, Sperling, Roehl, Harris & Sisk, Benjamin Silva, Jr., Albuquerque, for defendants-respondents.

Frank L. Spring, Catherine Gordon, Albuquerque, for amicus curiae New Mexico Psychological Ass'n.

ON REHEARING

WALTERS, Justice.

We granted petitioner's request for rehearing in this matter. The opinion filed on November 24, 1986 is withdrawn and the following substituted therefor.

OPINION

Petitioner, plaintiff in a workman's compensation case, appealed the trial court's dismissal of her claim for failure of proof. At her trial plaintiff had called her treating clinical psychologist to testify that her mental disability was work-related. After that testimony had been received but prior to the entry of judgment, the trial court ruled that the psychologist was not qualified to give an opinion concerning the causal connection between employee's disability

and her employment because NMSA 1978, Section 52–1–28(B) requires that causation in workman's compensation cases be proved by "expert medical testimony." The trial court's exclusion of the psychologist's previously received evidence came as the result of an opinion of the court of appeals, *Fierro v. Stanley's Hardware,* 104 N.M. 401, 722 P.2d 652 (Ct.App.1985), that had been filed in the interim between trial and judgment. *Fierro* held that "expert medical testimony" meant testimony by one licensed to practice medicine. Since psychologists are not permitted to practice medicine under our licensing laws, NMSA 1978, Section 61–9–17 (Repl.Pamp.1986), *Fierro* compelled the ruling by the trial court that plaintiff's witness was not qualified to give expert medical testimony under the Workman's Compensation Act. On appeal, the court of appeals agreed in a memorandum opinion that *Fierro* controlled and affirmed the lower court's dismissal of Madrid's suit. We now reverse the court of appeals and the district court.

The crux of the appeal is whether "expert medical testimony" under the Workman's Compensation Act means testimony only from one licensed to "practice medicine" under our licensing laws.

Section 52–1–28(B) provides:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by *expert medical testimony.* No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists.

*Id.* (Emphasis ours.)

We observe a basic rule of statutory construction: that words are presumed to have been used in their ordinary sense, *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971), that is, that words are given their ordinary and usual meaning unless the context indicates otherwise. *Davis v. Comm'r of Revenue,* 83 N.M. 152, 489 P.2d 660 (Ct.App.), *cert. denied,* 83 N.M. 151, 489 P.2d 659 (1971). The word "medical" pertains to "medicine," which is

"the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease." *Webster's Third New International Dictionary* 1402 (1966). Included in the definition of "medicine," moreover, is "psychologic medicine" which, in the medical profession, means "medicine in its relation to mental diseases." *Dorland's Illustrated Medical Dictionary* 786 (26th ed. 1981). In its commonly understood sense, licensed physicians are not the exclusive possessors of "medical" knowledge. A wide range of persons, from midwives to microbiologists, acquire and use their professional medical knowledge to diagnose conditions, to maintain health and to cure disease, and to teach those skills to other medical personnel. It is common knowledge that frequently those most knowledgeable in biomechanics, relating to the relationship between trauma and injury, are Ph.D.'s, not M.D.'s.

The phrase, "expert medical testimony," describes the kind of testimony required; neither adjective describes the *witness's* educational or licensing requirements.

We defer also to a second tenet of statutory construction which is specific to the Workman's Compensation Act. That is, the Act "must be liberally construed to accomplish [the] beneficent purposes for which it was enacted, and * * * all reasonable doubts must be resolved in favor of employees." *Avila v. Pleasuretime Soda, Inc.,* 90 N.M. 707, 708, 568 P.2d 233, 234 (Ct.App.1977).

Defendants would impose on the employee a more burdensome proof requirement than the statute necessarily mandates. That position may be sustained only if there is a clear legislative intent to limit the qualifications of expert witnesses.

The argument seems to be that the provision is a limiting one and, as the *Fierro* decision indicates, we must look to other limiting factors to ascertain its intent. Such an approach disregards the fact that the Workman's Compensation Act and the Uniform Licensing Act have nothing in common, do not relate to the same subject matter, and cannot be read in pari materia.

*See e.g., Day v. Penitentiary of New Mexico,* 58 N.M. 391, 271 P.2d 831 (1954) (provisions of Workman's Compensation Act are not in pari materia with a statute granting the state penitentiary corporate powers, among them the right to sue and be sued, because the statutes are unrelated; one deals with corporate matters and the other is *sui generis* and exclusive.) Secondly, to approach this as a "limiting" statute is inappropriate because Section 52–1–28(B) does not "limit" the right to workman's compensation, but addresses a question of proof. Notwithstanding that the Workman's Compensation Act as a whole is *sui generis,* the specific section to be construed concerns an evidentiary matter. The provision thus should be read more properly in pari materia with our rules of evidence. *See, e.g., Beach v. Bd. of Adjustment,* 73 Wash.2d 343, 438 P.2d 617 (1968) (zoning statute relating to certiorari read with general statute relating to certiorari); *State Highway Comm'n v. Churchwell,* 146 Mont. 52, 403 P.2d 751 (1965) (code section permitting inquiry into circumstances read in pari materia with code section relating to parole evidence); *State ex rel. Day v. County Court of Platte County,* 442 S.W.2d 178 (Mo.App.1969) (statute governing judicial review of zoning decisions read in pari materia with Administrative Procedure and Review Act). The specific phrase in question concerns expert testimony, and raises a question as to expertise; ergo, it should be read in pari materia with SCRA 1986, Evid.R. 11–702, which provides:

> If scientific, technical or other *specialized knowledge* will assist the trier of fact to understand the evidence or to determine a *fact* in issue, a witness qualified as an expert by *knowledge, skill, experience, training or education* may testify thereto in the form of an opinion or otherwise.

*Id.* (Emphasis added.)

■ The use of the disjunctive "or" in Rule 11–702 indisputably recognizes that an expert witness may be qualified on foundations other than licensure. The rule lists five general factors for the trial judge to consider in qualifying one offering medical evidence, some of which factors may or may not lead to the witness being licensed as a medical doctor. Determination of a witness's expertise rests within the sound discretion of the trial judge. *See, e.g., State ex rel. State Highway Dep't v. Fox Trailer Court,* 83 N.M. 178, 489 P.2d 1176 (1971); *Dahl v. Turner,* 80 N.M. 564, 458 P.2d 816 (Ct.App.), *cert. denied,* 80 N.M. 608, 458 P.2d 860 (1969).

The *Fierro* reading of Section 52–1–28(B), on the other hand, substantially restricts the trial court's discretion by insisting upon a minimum qualification requirement that only those licensed to "practice medicine" (*i.e.,* physicians and surgeons licensed to prescribe drugs) possess adequate medical knowledge to satisfy the statute. "Medical" is commonly understood to embrace all things relative to health and medicine, not only to things relative to licensed physicians. We discern some conflict with the *Fierro* interpretation and the naming of others as "health care professionals" by the legislature in the Workmen's Compensation chapter itself, *e.g.,* optometrists, dentists, podiatrists, osteopaths, nurses and chiropractors, as well as "duly licensed or certified" psychologists. Those persons obviously are considered by the legislature to be competent within their areas of providing "* * * cure, correction, prevention or diagnosis of any physical or mental condition." *See* NMSA 1978, § 52–4–1 (Cum.Supp.1986).

It consequently appears to us a curious proposition that the legislature has enough confidence in the competence of non-physician health care providers to grant them licenses to practice their professions, and to authorize treatment by them to injured compensation claimants, but to have intended that those same health care providers be prohibited from testifying concerning the cause of an injury which lies squarely within the areas of their competency.

The employer cites to other jurisdictions that discuss the "highly speculative nature" of psychological injuries, relying on *Thomas v. Workmen's Compensation Appeal Bd.,* 55 Pa.Cmwlth. 449, 423 A.2d 784, 787 (1980), and to cases intimating that psychiatric testimony is necessary in order

to protect employers from the possibility of feigned symptoms. *E.G., Andrus v. Rimmer & Garrett, Inc.,* 316 So.2d 433 (La. App.1975). In most of the cases cited, there was no direct issue of qualification of psychologists because *psychiatric* testimony had been submitted and formed the bases for the various courts' discussions of psychiatric testimony. Were we to assume an implied prohibition of testimony by psychologists, however, we would do so without logical grounds. We are referred to nothing indicating that a psychologist is less able to detect "feigned symptoms" than is a psychiatrist nor, even though some courts have observed that psychological injuries are "highly speculative in nature," that psychologists are more likely to improperly speculate than are psychiatrists. Nor does it follow that a blanket disqualification of those with specialized knowledge in the area of psychology serves the purpose of Evidence Rule 11–702, which is to assist the trier of fact to understand the evidence and to determine the issues of fact. To argue that psychological injuries are speculative lends support to our determination that various specialists may be able to assist the factfinder in determining whether the injuries are bona fide and whether they are work-related.

Lastly, defendants argue that the legislature probably intended its proposed definition of "expert medical testimony" as part of the employer's *quid pro quo* in giving up tort defenses for limited liability under the Workman's Compensation Act. Why this should be so is not clear. An employer's already limited liability would seem to be a sufficient consideration for the employee's necessity to prove a compensable claim by reasonable medical probability. The basic purpose of Section 52–1–28(B), as we have noted, is to ensure that claims are adequately proved, not to further limit liability.

■ The inescapable conclusion is that there is no legislative intent to limit the qualification of expert testimony to licensed physicians. Even expert testimony is not binding on the trier of facts. *See* SCRA 1986, U.J.I.Civ. 13–2005. The phrase "expert medical testimony" speaks to the type of specialized knowledge, *i.e.,* medical knowledge, essential to show the necessary connection between the work-related injury and any disability. The phrase does not go beyond that to require a specific type of license as a qualifying requirement for one offered as an expert to give competent medical information. Had the legislature intended what appellee argues, *i.e.,* that only a licensed medical doctor could testify regarding medical causation, it could have said so in plain, simple terms.

■ The employer's final contention that this is a matter solely for the legislature assumes that the only interpretation of the phrase is that a licensed medical doctor must testify. Not only is it fundamental that interpretation of the law is a judicial matter, but where the question is one of construction of state statutes, the state courts may pass upon it as an issue of law. *Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.,* 77 N.M. 481, 424 P.2d 397 (1966).

Because of our holding herein, it is unnecessary to consider the constitutional grounds urged by Madrid, that is, that the *Fierro* interpretation of Section 52–1–28(B) unduly restricts the trial judge's discretion in qualifying experts and therefore violates the separation of powers doctrine. *Cf. Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976) (statutorily created journalist privilege unconstitutional). Although Section 52–1–28(B) does concern matters of proof, which are evidentiary in nature and by definition, our construction of Section 51–2–28(B) does not contravene a rule of evidence.

■ The district court's order excluding "expert" testimony was based solely upon the holding in *Fierro* which, as we have noted, was decided after the psychologist had been accepted as an expert and allowed to testify, but before the trial court had entered its judgment. When the evidence was first admitted, the district judge ruled that under Evidence Rule 11–702,

pursuant to this witness's knowledge, skill, experience, education, training, she

is qualified as an expert psychologist and may offer opinion testimony in that field.

The record supports the judge's conviction, implicit in his ruling, that the witness was able to present competent medical opinion evidence. Her residency was completed at the medical branch of the University of Texas, and she had been an associate professor of mental health at the school of nursing there and at the University of New Mexico. She had also been assistant chief and acting chief psychologist at the United States Veterans Administration Hospital in St. Cloud, Minnesota, and director of psychology at the Southwestern Colorado Mental Health Center. Her extensive 30–year work experience was and is directly related to the prevention, alleviation and cure of mental disease, within typically "medical" settings, *i.e.*, medical schools, hospitals, mental health clinics and private practice. One would be hard-pressed to conclude that the witness lacks medical knowledge, skill, experience and expertise simply because she is licensed as a psychologist and not as a doctor of medicine. The district judge was, of course, correct when he initially accepted the witness as one qualified to provide expert medical testimony of causation of the plaintiff's claimed mental condition. The district judge was, of course, similarly correct in following the interim ruling of the court of appeals. Our decision today, however, requires reversal of the court of appeals and the district court, and remand to the district court to determine, considering the testimony of the clinical psychologist, whether plaintiff established her claim. Although the trial judge has since become an appellate judge, the proceedings have been fully transcribed and the transcript is sufficient for his successor to make that determination. The matter, therefore, is accordingly reversed and remanded.

IT IS SO ORDERED.

SOSA, Senior Justice, and RANSOM, J., concur.

STOWERS, J., and RICHARD B. TRAUB, District Judge, dissent without opinion.