2003-NMSC-026

77 P.3d 1014

Carolyn BANKS, Worker–Respondent,

v.

**IMC KALIUM CARLSBAD POTASH CO.
and Crawford & Co., Employer/Insurer–
Petitioners.**

No. 27,714.

Supreme Court of New Mexico.

Sept. 9, 2003.

Original Proceeding on Certiorari, Joan O'Connell, Hearing Officer.

Montgomery & Andrews, P.A., Sarah M. Singleton, Santa Fe, NM, Marek & Francis, Thomas L. Marek, Carlsbad, NM, Sidley, Austin, Brown & Wood, Timothy E. Kapshandy, Chicago, IL, for Petitioners.

Trenchard, Buckingham & Hoskins, Royce E. Hoskins, Roswell, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} IMC Kalium Carlsbad Potash Company and Crawford & Company ("Employer") appeal from an opinion of the Court of Appeals, *see Banks v. IMC Kalium Carlsbad Potash Co.*, 2003–NMCA–016, ¶ 6, 133 N.M. 199, 62 P.3d 290, in which that court reversed an order granting Employer summary judgment and dismissing the claim of Carolyn Banks ("Worker") under the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 2003), and the Occupational Disease Disablement Law, NMSA 1978, §§ 52–3–1 to –60 (1945, as amended through 2003). Prior to entering judgment for Employer, the Workers' Compensation Judge ("WCJ") entered an order excluding the evidence of Worker's health care provider under Rule 11–702 NMRA 2003. The WCJ had concluded that the evidence did not satisfy the standards for admitting expert testimony established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted in New Mexico by *State v. Alberico*, 116 N.M. 156, 167, 861 P.2d 192, 203 (1993), for Rule 11–702. In reversing the WCJ, the Court of Appeals reasoned that the Legislature had created a statutory scheme

with which the WCJ's ruling was inconsistent, *Banks,* 2003–NMCA–016, ¶ 2, 133 N.M. 199, 62 P.3d 290, and thus that the WCJ erred in excluding the testimony, *id.* ¶ 24. We granted certiorari in order to determine whether the Court of Appeals correctly construed the Act. We hold that *Daubert/Alberico* does not apply to the testimony of a health care provider pursuant to NMSA 1978, § 52–1–28(B) (1987).[1] We therefore affirm the Court of Appeals. The evidence of Worker's health care provider should not have been excluded; Employer was not entitled to summary judgment. Because we hold that the requirements of *Daubert/Alberico* do not apply to the testimony of a health care provider pursuant to Section 52–1–28, we do not decide whether the testimony of Dr. Ross satisfied the requirements of *Daubert/Alberico.* We remand for further proceedings consistent with this opinion.

## I

{2} Worker was employed by Employer from 1974 to 1998. For most of that time she worked underground in the Carlsbad potash mine. She performed several jobs while working underground in the mine, which exposed her to diesel exhaust fumes and nitrate smoke created by the mining operations. During her employment by Employer, she began developing respiratory problems. In 1994, Worker's treating physician, Dr. Lisa Perkowski, advised Worker to try not to work underground because her health was deteriorating. Worker, however, continued to work in the mine. She stopped working underground for most of 1996 and 1997. Her health continued to deteriorate. Eventually she was unable to work.

{3} Dr. Perkowski referred her to several specialists, including Dr. Gerald Ross at the Environmental Health Center in Dallas, who saw Worker in February 1998. Worker filed a claim for benefits under the Act with the Workers' Compensation Administration ("Administration") on July 17, 1998, based on exposure to chemicals while working in the mine. Worker named Dr. Ross as her treating physician in the complaint. After a period of evaluation, Dr. Ross wrote a medical report in February 1999, that diagnosed Worker with "[w]ork-related chemical exposures," resulting in or aggravating Worker's chronic cough, asthma, reactive airway dysfunction syndrome ("RADS"), allergic rhinosinusitis, toxic encephalopathy, food sensitivities, hypertension, and reactive anxiety and depression.

{4} On February 22, 2000, Employer moved to exclude the medical report, testimony by Dr. Ross, and the testing upon which he relied. In moving to exclude the report, testimony and testing, Employer acknowledged that Worker "has had several health problems." Employer argued, however, that the diagnosis Dr. Ross provided relied upon "scientifically discredited methodology" and was not admissible under Rule 11–702 and *Daubert/Alberico.* Rule 11–702, which governs the admissibility of expert testimony, states "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." In *Alberico,* we followed *Daubert* and construed 11–702 as requiring that "[w]hen scientific evidence is employed as a means of obtaining or analyzing data, the trial court must determine whether the scientific technique" is reliable and relevant to assist the trier of fact. *Alberico,* 116 N.M. at 167, 861 P.2d at 203; *see also Daubert,* 509 U.S. at 589, 113 S.Ct. 2786.

{5} Employer's motion noted that many courts in this country have rejected the scientific validity of RADS, otherwise known as multiple chemical sensitivity, under a variety of evidentiary standards. Employer challenged the methodology of the report, contending Dr. Ross had relied on "untestable hypotheses" under which differing results

---

1. The Occupational Disease Disablement Law has a similar provision, NMSA 1978, § 52–3–32 (1989), which the parties have not attempted to distinguish from Section 52–1–28(B). Therefore, while we refer to Section 52–1–28(B) throughout this opinion, our analysis applies to Section 52–3–32 as well. *See Banks,* 2003–NMCA–016, ¶ 15, 133 N.M. 199, 62 P.3d 290 ("We agree with the WCJ that the two sections should be construed to mean the same thing.").

could lead to the same conclusion, and therefore failed an important criterion under *Daubert/Alberico.* Employer pointed out that many scientific publications have rejected the methods of Dr. Ross and his colleagues and that the only relevant study he and his colleagues had published "miserably failed" under peer scrutiny. Employer argued that Dr. Ross had "no idea" of the error rate of the tests upon which he relied and that his theories and methods thus failed another important criterion under *Daubert/Alberico.* Employer concluded that Dr. Ross could not establish scientifically that Worker's condition was caused by the chemicals to which she had been exposed.

{6} Worker argued that *Daubert/Alberico* did not apply to Administration proceedings. Worker argued that the Act authorizes a health care provider to provide expert testimony in a workers compensation proceeding and thus no other standard need be met. She relied on the Legislature's intent, expressed in Section 52–1–28(B), which provides:

> In all cases where the employer or his [or her] insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, as defined in [NMSA 1978, § 52–4–1 (1993)], testifying within the area of his [or her] expertise.

She cited precedent from the Court of Appeals, such as *Coslett v. Third St. Grocery,* 117 N.M. 727, 876 P.2d 656 (Ct.App.1994), and *Fuyat v. Los Alamos National Laboratory,* 112 N.M. 102, 811 P.2d 1313 (Ct.App. 1991), which had construed Section 52–1–28(B) in other circumstances to permit expert testimony of a health care provider, notwithstanding a challenge by an employer that the testimony did not satisfy the burden imposed by the Legislature. Finally, she argued that the evidence she intended to offer did satisfy the requirements of *Daubert/Alberico.*

{7} The WCJ granted Employer's motion and excluded the evidence Employer had challenged. Employer then moved for summary judgment, and the WCJ also granted that motion. Worker appealed to the Court of Appeals, pursuant to NMSA 1978, § 52–5–8(A) (1989).

{8} The Court of Appeals agreed with Worker that *Daubert/Alberico* did not apply. *Banks,* 2003–NMCA–016, ¶ 24, 133 N.M. 199, 62 P.3d 290. After recognizing that other jurisdictions had addressed this issue, the court considered the effect that adoption of Employer's argument would have on the statutory scheme the Legislature had created. *Id.* ¶ 14. The court noted recent changes in the statutory scheme of the Act, which now provides employers as well as workers more control in selecting the worker's treating health care provider, and which also restricts expert testimony of health care providers to that of treating physicians and those who perform independent medical examinations. *Id.* ¶ 20. The Court of Appeals observed these changes give an employer "a significant amount of control over the designation of an individual as a treating physician."[2] *Id.* ¶ 23. The court reasoned that exclusion of the treating physician's testimony was "not an option." *Id.* The court also reasoned that the Act imposes a lesser quantum of proof than the typical tort case, *id.* ¶ 21, and therefore, "it is not unreasonable that the *Alberico/Daubert* test need not be employed in such cases," *id.* ¶ 22.

{9} On rehearing, the court addressed Employer's contention that this Court's decision in *Madrid v. University of California,* 105 N.M. 715, 737 P.2d 74 (1987) controlled. In *Madrid,* this Court held that Section 52–1–28(B) "concerns an evidentiary matter," and "thus should be read more properly in pari materia with [the] rules of evidence," namely, Rule 11–702. *Id.* at 717, 737 P.2d at 76. Employer argues that *Daubert/Alberico,* "as the legal test for assessing compliance with Rule 11–702," must also be applied to Section 52–1–28(B). The Court of Appeals distinguished *Madrid.* The Court reasoned

**2.** Employer pointed out to the Court of Appeals that Dr. Ross was not approved as a health care provider by the Administration Director. This assertion was not preserved with the Court of Appeals, and therefore the court did not determine the issue in its opinion. *Id.* ¶ 26.

that it had been decided when workers' compensation proceedings were held in district court and before either *Daubert* or *Alberico* had been decided, and therefore this Court did not decide the issue on appeal. *Banks,* 2003–NMCA–016, ¶ 26, 133 N.M. 199, 62 P.3d 290.

{10} Employer petitioned for certiorari under Rule 12–502 NMRA 2003. Employer contended that the opinion of the Court of Appeals was contrary not only to *Madrid* and Rule 11–702 but also to Administration regulations. Employer noted that this Court had not decided whether *Daubert/Alberico* applies to the statutory requirement in Section 52–1–18(B) that Worker prove causation by expert testimony of a health care provider. We granted certiorari on the issues raised in the petition. We begin with Employer's contention that the opinion is contrary to *Madrid.*

## II

■ {11} The determination of the questions on appeal to this Court is a matter of law and therefore our review is de novo. *State v. Torres,* 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal."); *cf. Rio Grande Chapter of the Sierra Club v. State Mining Comm'n,* 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806 ("[W]e will not defer to the [New Mexico Mining] Commission's ... statutory interpretation, as this is a matter of law that we review de novo."). We conclude the Court of Appeals correctly construed the Act. We are not persuaded that our holding in *Madrid* is to the contrary. Rather, we believe *Madrid* suggests that the Legislature's intent in creating the statutory scheme by which a worker is compensated for injuries arising out of employment is as significant in resolving the question raised in this appeal as it was in the questions resolved by that case. We also are not persuaded that the opinion of the Court of Appeals is inconsistent with the regulations adopted by the Administration. Finally, we believe that the adoption of Employer's argument would be inconsistent with the Legislature's intent in

creating an administrative proceeding for the determination of claims for compensation under the Act. We agree with Worker that in presenting her evidence as required by Section 52–1–28(B) she was not required to satisfy *Daubert/Alberico.*

### A

{12} In *Madrid,* we interpreted Section 52–1–28(B) at a time when that section required a worker to provide "expert medical testimony" regarding proof of causation. *See* 1959 N.M. Laws, ch. 67, § 7. We held that expert medical testimony did not limit the qualifications of such an expert to licensed physicians. *Madrid,* 105 N.M. at 718, 737 P.2d at 77. In our discussion, we noted that Rule 11–702 "recognizes that an expert witness may be qualified on foundations other than licensure." *Id.* at 717, 737 P.2d at 76. Our holding in *Madrid* broadly interpreted the applicability of Section 52–1–28(B) to include the expert testimony of a psychologist.

{13} We rejected the logic that "the [L]egislature [had] enough confidence in the competence of non-physician health care providers ... to authorize treatment by them to injured compensation claimants, but to have intended that those same health care providers be prohibited from testifying concerning the cause of an injury which lies squarely within the areas of their competency." *Madrid,* 105 N.M. at 717, 737 P.2d at 76. In fact, Section 52–1–28(B) was amended the same year as *Madrid* by changing the language from "expert medical testimony" to "expert testimony of a health care provider." *See* 1987 N.M. Laws, ch. 235, § 3.

{14} The Court of Appeals has observed that this amending language and the timing of the amendment indicates that "the purpose of the amendment was to expand the admissibility of expert testimony regarding causation, not to restrict it." *Third St. Grocery,* 117 N.M. at 730–31, 876 P.2d at 659–60 ("The timing and content of the 1987 amendment strongly imply a legislative determination that the prior language was restricting workers too much in how they could prove causation."). We follow this statutory interpretation in our analysis. Under *Madrid,* Section 52–1–28(B) must be read in pari

materia with Rule 11–702, this Court made more testimony admissible, not less, and we did so because we believed that was consistent with the Legislature's intent in enacting Section 52–1–28.

{15} We turn next to the regulations the Administration has adopted to govern proceedings before a WCJ. We first address Employer's argument that the Court of Appeals "arbitrarily" excluded Rule 11–702 from workers' compensation proceedings, while the regulations expressly include the rule. Then we address the applicability of *Daubert/Alberico* to proceedings before a WCJ.

**B**

{16} The regulation on which Employer relies, 11.4.4.12(O) NMAC (Feb. 15, 1997), amended a previous regulation entitled "Rules Governing Evidence," which provided that "[e]xcept where provided otherwise in these Rules, the Rules of Evidence for the District Courts of the State of New Mexico shall apply." WCA Rule 92.4.1 (June 29, 1989, repealed 1996). The current regulation adopts the Rules of Evidence for the district courts in workers' compensation hearings, "[u]nless otherwise stated or necessarily implied in the preceding rules." 11.4.4.12(O) NMAC. The "preceding rules" implemented the Act. *See* 11.4.4.3 NMAC (June 1, 1996). Because the rules implement the Act, they must be read in pari materia with Section 52–1–28(B), which requires a worker to establish causation through the testimony of a qualified "health care provider."

{17} Employer interprets *Daubert/Alberico* as an integral part of Rule 11–702, rather than "a separate, different, or supplemental standard for admissibility of scientific evidence." Employer suggests that the reference to *expert* testimony in Section 52–1–28(B), as well as the reference to the Rules of Evidence in the regulations, supports a conclusion that *Daubert/Alberico* applies.

{18} We recognize that other jurisdictions have addressed whether the requirements of *Daubert* or its precursor, *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923), should apply in an administrative workers' compensation proceeding. *See United States Sugar Corp. v. Henson,* 823 So.2d 104, 107 (Fla.2002) (holding that in Florida, where the rules of evidence apply in workers' compensation proceedings, the *Frye* general acceptance standard for admissibility of novel scientific evidence applies); *Mulroy v. Becton Dickinson Co.,* 48 Conn.App. 774, 712 A.2d 436, 439 (Conn.App.Ct.1998) (holding that "it would be contrary to the spirit of [the Connecticut Workers' Compensation Act] to establish formal requirements for the admissibility of scientific testimony in workers' compensation cases, especially in light of the fact that the rules of evidence do not apply."); *Armstrong v. City of Wichita,* 21 Kan.App.2d 750, 907 P.2d 923, 929 (Kan.Ct. App.1995) (holding that neither *Frye* nor *Daubert* apply because the rules of evidence do not apply to administrative workers' compensation proceedings); *K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 26–27 (Ind.Ct.App. 1993) (holding that expert testimony is only admissible in workers' compensation proceedings if it is shown to be reliable). Because our Workers' Compensation Act and our law are particular to New Mexico, however, we analyze this case under state law and do not rely on the analysis of these out-of-state cases.

{19} In *Torres,* 1999–NMSC–010, ¶ 43, 127 N.M. 20, 976 P.2d 20, further, we limited the requirements of *Daubert/Alberico* to testimony that requires scientific knowledge. We held that " 'application of the *Daubert* factors is unwarranted in cases where expert testimony is based solely upon experience or training.' " *Id.* (quoting *Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1518 (10th Cir. 1996), *overruled by Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). Thus, after *Kumho Tire Co.,* we apply *Daubert* somewhat differently than do the federal courts.

{20} In context, "health care provider" is a phrase with a very specific meaning. The Act provides an extensive definition of health care provider, including those in professions whose expertise would not necessarily require "scientific knowledge." NMSA 1978, § 52–4–1(B through O) (1993) (including, for example, certified or licensed nurse-mid-

wives, physical therapists, occupational therapists and nurse practitioners). 11.4.1.7(L) NMAC (Apr. 30, 1998) also provides a definition of health care provider. Thus, the rule of *Daubert/Alberico* would not necessarily be implicated, even in the district court, by the testimony of some health care providers.

{21} The broad statutory definition of health care provider, and our holding in *Torres,* are consistent with *Fuyat,* 112 N.M. at 106, 811 P.2d at 1317, the primary case on which the Court of Appeals relied. *Fuyat* provides an important analysis of the Legislature's intent in creating the administrative procedure within which workers' claims for work-related injuries must proceed. In *Fuyat,* the Court of Appeals held that the expert testimony on causation of two doctors did not have to meet the pre-*Daubert/Alberico* standard of admissibility in a workers' compensation case. *Id.* The court affirmed the trial court's determination that the two treating physicians who specialized and diagnosed the plaintiff according to their specialty in environmental medicine were qualified to testify at trial despite the fact that their specialty was not recognized by the American Medical Association. *Id.* The court reasoned that the doctors were qualified experts because they were the plaintiff's treating physicians and were licensed physicians with experience diagnosing and treating the types of symptoms of which the plaintiff claimed. *Id.*

{22} We agree with the Court of Appeals that the reasoning in *Fuyat* applies to this case. Dr. Ross is Worker's treating health care provider and therefore qualified to testify under Section 52–1–28(B). A treating physician is uniquely qualified to give an opinion about his or her diagnosis of a patient and the admissibility of such testimony should be given due deference. As one federal court explained, "[t]he rationale for giving greater weight to a treating physician's opinion is that he [or she] is employed to cure and has a greater opportunity to know and observe his [or her] patient...." *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 783 (3d Cir.1996) (quotation marks and quoted authority omitted). A treating physician's testimony is based more on "experience and

training" than on the kind of scientific knowledge to which New Mexico courts apply *Daubert/Alberico. See Torres,* 1999–NMSC–010, ¶ 43, 127 N.M. 20, 976 P.2d 20; *cf. Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 262–63 (4th Cir.1999) (holding "that a reliable differential diagnosis provides a valid foundation for an expert opinion," despite the fact that in federal court *Daubert* applies to all expert testimony, scientific or not). Furthermore, the treating physician identifies a causal relationship from the symptoms of his or her patient for the purpose of identifying the disease in order to treat the symptoms or cure the patient. *See* Jean M. Eggen, *Clinical Medical Evidence of Causation in Toxic Tort Cases: Into the Crucible of Daubert,* 38 Hous. L.Rev. 369, 417 (2001) ("A significant part of [a treating physician's diagnosis] is determining the likely causes of the patient's symptoms so that the physician can determine an effective treatment protocol."); Federal Judicial Center, *Federal Reference Manual on Scientific Evidence* 467 (2d ed. 2000) ("Causal reasoning allows the clinician to conceptualize the possible course of the patient's disease and predict the effects of treatment, and is important in evaluating the coherency of a diagnosis."). The expertise of a treating physician is the training, experience and familiarity with the patient whom he or she is treating. The "expert" testimony required by Section 52–1–28(B) refers to testimony based on this training, experience and familiarity.

{23} After comparing the language in the previous version, which instructed "except where provided otherwise," with the current version, "unless otherwise stated *or necessarily implied* in the preceding rules," we conclude that the regulations permit a more flexible interpretation of the evidentiary standards in workers' compensation proceedings than the one contemplated by the previous regulation. *See Martinez v. Research Park, Inc.,* 75 N.M. 672, 681, 410 P.2d 200, 206 (1965) *overruled on other grounds by Lakeview Invs., Inc. v. Alamogordo Lake Vill., Inc.,* 86 N.M. 151, 155, 520 P.2d 1096, 1100 (1974) ("It is a familiar rule of statutory construction that the adoption of an amendment is evidence of an intention by the legislature to change the provision of the original

law."); *N.M. Dep't of Health v. Ulibarri*, 115 N.M. 413, 416, 852 P.2d 686, 689 (Ct.App. 1993) ("We construe administrative agency rules in the same manner as we interpret statutes."). Further, we think the dispositive question is whether 11.4.4.12(O) NMAC, when read together with Section 52–1–28(B), necessarily implies a different evidentiary principle than that of *Daubert/Alberico*. We conclude that it does.

### C

{24} Under Section 52–1–28(B), a worker must establish causation through the testimony of a health care provider. The Court of Appeals summarized the statutory definition of health care provider as "a person who is licensed, certified or registered as a provider of certain specified medical services." *Banks*, 2003–NMCA–016, ¶ 16, 133 N.M. 199, 62 P.3d 290 (summarizing § 52–4–1). The Act provides for the selection of a health care provider and gives both a worker and an employer a significant amount of control in selecting the health care provider. *See City of Albuquerque v. Sanchez*, 113 N.M. 721, 725–26, 832 P.2d 412, 416–17 (Ct.App.1992).

{25} An employer has the right to make the initial health care provider selection or to let the worker do so. NMSA 1978, § 52–1–49(B) (1990). This selection is unchallengeable for the first sixty days of treatment, at which time the party that did not make the initial selection may select a different health care provider. Section 52–1–49(C). The employer may object to the worker's selection; the worker may object to the employer's choice. Section 52–1–49(D).

{26} When a party objects to the selection of a health care provider, it must file a request with a WCJ that states an objection pursuant to the regulations. Section 52–1–49(E). A party challenging the selection of a health care provider must prove that the health care provider is "not providing the [w]orker reasonable and necessary medical care." 11.4.4.11(L) NMAC (June 1, 1996); *accord* Section 52–1–49(F). The WCJ then will either grant or deny the request. If the request is granted, the WCJ will select the health care provider requested by the com-

plaining party, or will make an independent selection. Section 51–1–49(F).

{27} In the event of a dispute "concerning any medical issue," the Act provides for an independent medical examination. *See* § 52–1–51. In the event the worker selects a new health care provider pursuant to Section 52–1–49(C), the employer is entitled to periodic examinations by the health care provider previously chosen. *See* § 52–1–51(D).

{28} The Act limits testimony at the compensation hearing to a treating physician or a health care provider who has provided an independent medical examination pursuant to the Act. *See* § 52–1–51(C). The regulations limit the presentation of a health care provider's testimony. A regulation excludes a health care provider from giving live testimony at a proceeding, 11.4.4.12(F)(1), but permits the admission of the deposition itself at the proceeding in lieu of the health care provider's live testimony, 11.4.4.12(G)(4) NMAC. This rule expressly deviates from the general rule of civil procedure that does not allow deposition testimony to be directly read into evidence, *see* Rule 1–032 NMRA 2003; *Arenivas v. Cont'l Oil Co.*, 102 N.M. 106, 109, 692 P.2d 31, 34 (Ct.App.1983) (holding that Rule 1–032 does not permit deposition testimony to be read into evidence unless the witness is unavailable), and is incompatible with the requirements of *Daubert/Alberico*, which requires a separate presentation of testimony and evidence to determine whether the expert is qualified and whether the evidence is relevant and reliable.

{29} The Act and the regulations limit the evidence a worker may present in support of the burden imposed by Section 52–1–28(B). In a district court proceeding, a plaintiff wishing to establish causation of injury presumably would be able to offer the testimony of several expert witnesses; and if one or more experts were excluded under *Daubert*, a plaintiff would not necessarily lack evidentiary support for his or her position. In this case, however, because of the restrictions on who may provide expert testimony, when the WCJ excluded the medical report and testimony, Worker's claim lacked necessary evidentiary support. That result appears in-

consistent with the Legislature's intent in requiring proof of causation by a health care provider and limiting those who may testify as well as the statutory scheme for selecting a provider.

{30} If an employer fails to object to the worker's choice of health care provider during the diagnosis stage, that employer ought not be able subsequently to exclude the provider's testimony as unreliable, especially not at a time when the worker would be left without alternatives to establish causation of his or her injury. If an employer is not satisfied with a worker's choice of health care provider, it should make that objection known earlier, pursuant to Section 52–1–49. As the Court of Appeals suggested, subsequent exclusion of the health care provider's testimony under Rule 11–702 seems an inappropriate alternative. *Banks*, 2003–NMCA–016, ¶ 22, 133 N.M. 199, 62 P.3d 290 ("Exclusion of Dr. Ross' testimony under the *Alberico/Daubert* standard is not an option available to Respondents.").

{31} We hold that *Daubert/Alberico* is not applicable to Employer in challenging Worker's proof pursuant to Section 52–1–28. The Legislature has created a selection process in which the presence of a treating physician or other health care provider at the adjudication stage of a worker's claim is required. A determination of whether the health care provider's testimony meets *Daubert/Alberico* would be overly burdensome for workers as well as the process the Legislature created and is inconsistent with the Legislature's intent. The testimony of Worker's health care provider should not have been excluded.

### D

{32} In replacing the "general acceptance" test adopted from *Frye*, 293 F. at 1014, *Daubert/Alberico* "established evidentiary reliability as the hallmark for the admissibility of scientific knowledge." *Torres*, 1999–NMSC–010, ¶ 24, 127 N.M. 20, 976 P.2d 20. Before evidence may be admitted pursuant to this standard, the party seeking to admit scientific evidence must "first establish[ ] the evidentiary reliability of the scientific knowledge." *Id.* The trial court acts as a gatekeeper to ensure that the fact-

finder only considers reliable and relevant scientific evidence. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786.

{33} Employer raises a concern that without the safeguard of the *Daubert/Alberico* standard all WCJ proceedings will be "forced to accept unreliable and unscientific testimony." We disagree. By rejecting *Daubert/Alberico* as a bar to the admissibility of the medical report, the testimony of Dr. Ross and the testing on which he relied, we do not intend to conclude that any of the three must be taken as true. We hold only that they should have been considered, rather than excluded.

{34} The WCJ, as trier of fact, ultimately can accept or reject the evidence once admitted. *See Fuyat*, 112 N.M. at 106, 811 P.2d at 1317. In *Fuyat*, the WCJ correctly admitted the testimony since he found that the doctors were qualified physicians. It was then up to the WCJ to decide whether or not to accept their diagnosis. *Id.* The Court of Appeals explained that the WCJ ultimately may be unpersuaded by the theories of causation, or he or she may "accept some and reject some of the evidence presented." *Id.*

{35} Employer notes that we have adopted and applied an uncontradicted medical evidence rule in New Mexico in reviewing a worker's proof of causation. *See Hernandez v. Mead Foods, Inc.* 104 N.M. 67, 716 P.2d 645 (Ct.App.1986).

"The uncontradicted medical evidence rule . . . is an exception to the general rule that a trial court can accept or reject expert opinion as it sees fit. The rule is based on NMSA 1978, [§] 52–1–28(B), which requires the worker to prove causal connection between disability and accident as a medical probability by expert medical testimony. Because the statute requires a certain type of proof, uncontradicted evidence in the form of that type of proof is binding on the trial court."

*Id.* at 70, 716 P.2d at 648 (citations omitted). It is not applicable when a worker's evidence is in fact contradicted by other evidence. *See Martinez v. Universal Constructors Inc.*, 83 N.M. 283, 283, 491 P.2d 171, 171 (Ct.App. 1971). There also are a number of excep-

tions to the exception. *See generally Hernandez,* 104 N.M. at 70–71, 716 P.2d at 648–49. For example, if the expert who testifies lacks pertinent information, his or her opinion cannot satisfy the burden imposed by Section 52–1–28. *See Niederstadt v. Ancho Rico Consol. Mines,* 88 N.M. 48, 51, 536 P.2d 1104, 1107 (Ct.App.1975). We are not persuaded that the uncontradicted medical evidence rule provides an additional reason to hold that as applied in proceedings before a WCJ, Rule 11–702 incorporates *Daubert/Alberico.* Rather, we believe that the uncontradicted medical evidence rule, which arises from the predecessor to the present Section 52–1–28, supports a conclusion that *Daubert/Alberico* is not applicable to the proof required under Section 52–1–28. The rule and the exceptions to it seem sufficient to protect the interests of both workers and employers.

{36} That is not our only reason for believing Employer's policy argument is not well-founded. An administration proceeding is conducted before and decided by a WCJ, acting without a jury. In *State v. Anderson,* 118 N.M. 284, 291, 881 P.2d 29, 36 (1994), we indicated that the purpose of *Daubert/Alberico* was to assist the jury. We summarized *Alberico* as providing that "in a case where expert testimony is offered on a scientific topic *unfamiliar to lay jurors,* the trial court's first task is to determine whether the testimony is sufficiently reliable and relevant *to help the jury* in reaching accurate results." *Anderson,* 118 N.M. at 291, 881 P.2d at 36 (internal quotations and quoted authority omitted) (emphases added).

{37} One federal court has recognized in the context of the federal Black Lung Benefits Act, that "rigorous exclusionary rules for the administration of evidence make little sense in hearings before an administrative agency where the [Administrative Law Judge] ALJ acts as both judge and factfinder. When the judge is also factfinder, he [or she] is equally exposed to evidence whether he [or she] admits it or excludes it." *United States Steel Mining Co. v. Dir., Office of Workers' Comp. Programs,* 187 F.3d 384, 388 (4th Cir.1999). The court in that case went on to conclude that the Administrative Law Judge can evaluate the evidence once it

has been admitted. *Id.* Consistent with *Fuyat,* we believe that the WCJ on remand should be free to accept or reject all or any part of the testimony offered by Dr. Ross. *See Underwood v. Elkay Mining, Inc.,* 105 F.3d 946, 949 (4th Cir.1997) ("Because the [Administrative Law Judge] ALJ is presumably competent to disregard that evidence which should be excluded or to discount that evidence which has lesser probative value, it makes little sense, as a practical matter, for a judge in that position to apply strict exclusionary evidentiary rules."). Such determinations should not be constrained by *Daubert/Alberico.*

{38} We do not mean to suggest that *Daubert/Alberico* is not applicable whenever a judge is the trier of fact. *See State v. Campos,* 1996–NMSC–043, ¶¶ 27–28, 122 N.M. 148, 921 P.2d 1266. The diminished utility of the protection provided in this particular context, an administrative proceeding in which the judge decides both fact and law within a complex statutory scheme, is a relevant consideration in determining whether *Daubert/Alberico* required the exclusion of the report, testimony and testing on which Worker intended to rely.

### III

{39} For these reasons, we affirm the Court of Appeals. Dr. Ross offered testimony regarding his diagnosis of the causal connection between Worker's current symptoms and her previous exposure to chemicals in the mine. His conclusions were made pursuant to his treatment, which was within his training and experience. The WCJ may consider Employer's arguments in evaluating the strength of Worker's proof. The report, testimony, and testing should be considered on remand.

{40} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON and EDWARD L. CHÁVEZ, Justices.