This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37210**

**BRENDA SMITH,**

> Worker-Appellant,

v.

**ARAMARK SERVICES/LOS ALAMOS
NATIONAL LABORATORY, and
INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA,**

> Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Rachel A. Bayless, Workers' Compensation Judge**

Dunn Law Offices
Rod Dunn
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
M. Scott Owen
Scott F. Stromberg
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Brenda Smith (Worker) appeals the Workers Compensation Judge's (WCJ) order denying benefits for injuries she sustained while employed with Aramark Services/Los Alamos National Laboratory (Employer) contending that the WCJ erred in rejecting

expert testimony from her treating physicians and applied an incorrect legal standard. We affirm.

**BACKGROUND**

**{2}** On June 18, 2013, Worker injured her right knee when she fell from a loading dock while unloading a delivery truck at work. Worker timely filed for workers' compensation benefits. The parties stipulated that Worker suffered compensable injuries to her left knee, cervical spine, and lumbar spine as a result of the work-related accident, leaving only compensation for Worker's right knee at issue. The WCJ held a formal hearing on the merits to determine whether: (1) Worker's right knee injuries were causally related to her work place accident to a reasonable degree of medical probability; and if so, (2) Worker was entitled to medical, indemnity, and permanent partial disability (PPD) benefits; and (3) Worker was entitled to mileage reimbursement. Joint Exhibits 1 through 14 included Worker's medical records, physical therapy records, and deposition testimony from her treating physicians, Dr. John Garcia, Dr. Philip Shields, and Dr. David Woog.

**{3}** After a hearing on the merits, the WCJ entered a compensation order finding: Dr. Garcia's causation testimony "vague and equivocal"; Dr. Shields' causation opinion was not binding on the court because he lacked sufficient foundation to form an opinion as to the cause of Worker's knee complaints; and Dr. Woog did not treat Worker for pain complaints in her knees.

**{4}** The WCJ concluded that "[t]o a reasonable degree of medical probability, Worker sustained a contusion to her right knee as the natural and direct result of the June 18, 2013, work[]place accident and the contusion resolved on or before September 18, 2013." Consequently, the WCJ held that Worker did not require and was not entitled to further medical treatment for the contusion injury. With regard to Worker's other right knee complaints, the WCJ found that Worker "failed to establish . . . within a reasonable degree of medical probability that the [work-related] accident aggravated, accelerated, or combined with Worker's pre[]existing arthritis[1] to create a disability or permanent impairment to Worker's right knee." [**RP 157 CL 18**]. This appeal followed.

**DISCUSSION**

**{5}** Worker raises five claims of error. Specifically, Worker contends the WCJ: (1) erred in finding that Dr. Garcia's testimony regarding her right knee pain and her work related accident was insufficient to establish causation; (2) abused its discretion in sustaining Employer's objections as to "form and foundation" during Dr. Garcia's testimony on causation; (3) erred in its evaluation of Dr. Garcia's causation testimony; (4) abused its discretion in sustaining Employer's objection during Dr. Shield's testimony on causation for lack of foundation; and (5) applied an incorrect legal standard in (a)

---

[1] MRIs ordered by Dr. Garcia revealed that Worker suffered from "significant or severe" arthritis in her knees, a chronic condition that he opined existed for years prior to the accident.

determining Worker failed to meet her burden of proof as to causation and (b) denying Worker partial loss of use and medical benefits for her right knee injury.

{6}     We organize and address Worker's five issues in three sections: (I) the WCJ's rulings as to Dr. Garcia; (II) the WCJ's ruling as to Dr. Shields; and (III) the legal standard employed by the WCJ. In reviewing the WCJ's order, "we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 20, 409 P.3d 956 (internal quotation marks and citation omitted). "Substantial evidence is credible evidence in light of the whole record that is sufficient for a reasonable mind to accept as adequate to support the conclusion." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 9, 347 P.3d 732 (alteration, internal quotation marks, and citation omitted). "We disregard that evidence which has little or no worth and then decide if there is substantial evidence in the whole record to support the agency's finding or decision." *Molinar*, 2018-NMCA-011, ¶ 20 (alterations, internal quotation marks, and citation omitted). "Where all or substantially all of the evidence on a material issue is documentary or by deposition, the reviewing court will examine and weigh it, and will review the record, giving some weight to the findings of the court on such issue, and will not disturb the same upon conflicting evidence unless such findings are manifestly wrong or clearly opposed to the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). "We review the WCJ's application of the law to the facts de novo." *Id.*

{7}     We look to NMSA 1978, Section 52-1-28(A) (1987) in determining whether Worker has proven causation, and consequently, whether Worker is entitled to compensation. Section 52-1-28(A) requires that a worker's compensation claim shall only be allowed "when the worker has sustained an accidental injury arising out of and in the course of [her] employment; (2) when the accident was reasonably incident to [her] employment; and (3) when the disability is a natural and direct result of the accident." Furthermore:

{8}     Section 52-1-28(B) requires the worker to establish causation as a probability by expert testimony of a health care provider in cases where the employer disputes a causal connection between the accident and the disability. The medical expert need not state his opinion in positive, dogmatic language or in the exact language of the statute. But he must testify in language the sense of which reasonably connotes precisely what the statute categorically requires. "An opinion, an honest effort to logically and rationally connect the cause and effect, is all that we can hope to obtain." *Molinar*, 2018-NMCA-011, ¶ 29 (internal quotation marks and citations omitted).

## I.     Dr. Garcia

{9}     Worker's first three arguments involve the deposition testimony of Dr. Garcia—who Worker saw for her injuries two days after the accident. We first set forth Dr. Garcia's testimony on causation, as it is pertinent to all three issues.

**{10}** According to Worker, the extent of Dr. Garcia's testimony on causation includes the following:

> Q:     Hypothetical question. You understand what a hypothetical question is?
>
> A:     I think so.
>
> Q:     Yeah. And basically I'm just asking you to assume certain things to be true and base your opinion on these assumptions. I'd like you to assume that [Worker] did not have any history of problems or complaints with her knees, either right or left, her wrist, left wrist, or her low back prior to June 18, 2013.
>
> I'd like you to assume that on June 18, 2013, [Worker] fell off an elevated platform from a truck while unloading material, landing on both knees, as well as an outstretched hand.
>
> I'd like you to assume that immediately following the accident, [Worker] had pain in her knees and her left wrist, and I'd like you to assume that [Worker] also began experiencing pain in her low back, but it was not her chief complaint at the time you first saw her.
>
> I'd like you to assume that following the accident, [Worker]'s low back pain became worse and worse over time until after a little more than a month, it had become her chief complaint.
>
> Making those assumptions, can you state to a reasonable degree of medical probability whether the injuries to the knees, the left wrist and the low back are the natural and direct result of the incident that happened on June 18, 2013?
>
> MS. BEAULIEU: Objection. Form. Foundation.[2]
>
> A:     Hypothetically, yes.
>
> Q:     Okay. Can you explain to the [WCJ] how you came to that opinion?
>
> A:     By the patient's complaints.

---

2 The WCJ sustained the objection as to form.

Q: Meaning that if she had no complaints before, and the complaints arose after the work-related accident that you would causally relate the complaints to the work-related accident?

MS. BEAULIEU: Objection. Form and foundation.[3]

A: Yes.

## A. Causal Connection and Objection

**{11}** Worker argues that Dr. Garcia's testimony was not vague and equivocal. Rather, Worker contends Dr. Garcia's testimony was sufficient to establish a causal connection between the accident and Worker's right knee complaints. Worker also argues that the WCJ erred in sustaining Employer/Insurer's objections.

**{12}** When providing testimony as to causation, "[a] medical expert need not state his opinion in positive dogmatic language or in the exact language of the statute. But he must testify in language the sense of which reasonably connotes precisely what the statute categorically requires." *Molinar*, 2018-NMCA-011, ¶ 29 (internal quotation marks and citation omitted). In this case, the WCJ found that Dr. Garcia's testimony was insufficient to establish a causal connection between the accident and Worker's right knee complaints because, viewed as a whole, the testimony was "vague and equivocal." Specifically, the WCJ explained that

> "[i]njuries to the knees" in the hypothetical posed to Dr. Garcia is vague. It is unclear whether Worker is asking Dr. Garcia to relate Worker's bilateral knee contusions, which was Dr. Garcia's original diagnosis, [and] Worker's ongoing post-accident complaints of pain in her knees, which MRIs showed had significant, chronic pre-existing arthritis, or to relate Worker's contusions and ongoing pain complaints.

Given Worker's pre-existing arthritis in her knees, that she complained of more than one knee issue resulting from the accident, and only the injury to her right knee was at issue, Dr. Garcia's affirmative response to Worker's hypothetical question does not reasonably connote a causal connection between the accident and Worker's right knee injury in particular. *See id.* ¶ 30 ("Expert testimony that fails to speak to the ultimate issue in the case is not afforded substantial weight."(internal quotation marks and citation omitted)). Indeed, Worker's hypothetical question referencing "injuries to the knees" does not "logically and rationally connect the cause and effect" between the accident and her claimed ongoing right knee injury because it is unclear what "effect" Dr. Garcia is referring to in his testimony. *See id.* ¶ 29. Accordingly, we conclude that the WCJ did not err in finding that, "[v]iewed as a whole, Dr. Garcia's testimony on causation was vague and equivocal, and not sufficient to meet Worker's burden to

---

3 The WCJ sustained this objection finding the question leading.

establish causation for Worker's subjective ongoing right knee complaints to a reasonable degree of medical probability."

**{13}** For the same reason, we conclude that the WCJ did not abuse its discretion when it sustained Employer/Insurer's form objection because Worker's hypothetical referencing "injuries to the knees" was vague and equivocal in light of the specific facts and circumstances of the case. *See Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341 ("With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling."). We, therefore, affirm the district court's findings in these regards.

## B.    Aggravation, Acceleration, or Combination With Pre-Existing Condition

**{14}** Worker argues that she did not need to provide testimony regarding whether the accident aggravated, accelerated, or combined with a pre-existing injury to establish causation between the accident and her right knee injury. Worker specifically argues that "Dr. Garcia's testimony regarding causation, both on direct and cross examination, was 'an honest effort' by Dr. Garcia 'to logically and rationally connect the cause and effect[,]' " and that there is no case law that "stands for the proposition that an injured worker must use the magic words 'aggravate,' 'accelerate' or 'combined with' when asking a physician a causation question."

**{15}** An expert medical opinion should be "an honest effort to logically and rationally connect the cause and effect[.]" *Molinar*, 2018-NMCA-011, ¶ 29 (internal quotation marks and citation omitted). "Once a worker establishes that the accidental injury caused disability, it matters not whether a preexisting condition contributed to the ultimate disability." *Id.* ¶ 28 (alterations, internal quotation marks, and citation omitted). "Thus, principles of causation are equally applicable to the assessment of compensability regardless of whether an accidental injury is new or if it entails aggravation of a preexisting condition." *Id.* However, "[a]ggravation, acceleration, or worsening of a preexisting condition[,]" can be "a discrete type of injury[.]" *Id.* ¶ 23.

**{16}** In this case, Dr. Garcia noted after reviewing MRI findings of Worker's knees that "both knees showed arthritic changes," and he testified that "the arthritic changes shown on MRIs were from a prior chronic condition that existed for years prior to the work accident." Worker testified at trial that "she had never had any pain or problems with her right knee[,]" she "had never seen a doctor about right knee pain or problems" or "been diagnosed with a right knee injury," and she "had never been treated for right knee pain or complaints" prior to the accident. When asked on cross examination whether Worker's degenerative issues with her back and knees could relate to the work accident, Dr. Garcia responded, "[Worker] could have had a pre-existing condition that was aggravated by the fall." However, Dr. Garcia also testified that based on the history given by Worker, her bilateral knee pain started after the work accident; he was not presented with any medical records inconsistent with the history given by Worker; and

that despite denying a prior history of pain he would be surprised if Worker never had knee pain prior to the accident.

**{17}** First, we observe that Worker was not required to provide expert testimony establishing an aggravation, acceleration, or combination of a preexisting injury with the accident in order to demonstrate that the accident was the cause of her right knee injury. *See Molinar*, 2018-NMCA-011, ¶ 28. Indeed, Worker did not assert that her knee injury was an aggravation, acceleration, or combination of a preexisting injury. Contrary to Worker's apparent belief, the WCJ's finding did not state that aggravation, acceleration, or combination testimony was *required* in order to show causation. Rather, the WCJ simply found that Dr. Garcia's testimony supported neither a specific aggravation injury, nor Worker's theory of causation generally. We agree with this conclusion, as Dr. Garcia never testified that the accident aggravated a preexisting injury. We, therefore, conclude that the WCJ did not require—improperly or otherwise—Worker to present expert testimony of aggravation, acceleration, or combination.

**{18}** Second, Dr. Garcia's testimony that Worker possibly had some type of preexisting condition aggravated by the accident did not establish a causal connection between the accident and Worker's right knee injury. Testimony that Worker "could have had a pre[]existing condition that was aggravated by the fall" does not "logically and rationally connect" the work-related accident as the cause and Worker's alleged right knee injury as the effect. *Id.* ¶ 29. Moreover, Dr. Garcia's testimony was in response to questioning regarding pain and degenerative issues with Worker's back *and* knees, and it is unclear whether his vague reference to a "pre-existing condition" that could have been aggravated by the fall referred specifically to Worker's right knee.

**{19}** Accordingly, we hold that the WCJ did not err in finding that Dr. Garcia's aggravation testimony was vague and insufficient to establish causation generally or to establish an aggravation injury. *Compare Trujillo v. Los Alamos Nat'l Lab.*, 2016-NMCA-041, ¶¶ 32, 36, 368 P.3d 1259 (holding that the expert doctor testifying that "pre[]existing cervical and lumbar pain were 'possibly aggravated' by the accident" and that "a fall from a scaffolding 'could have' aggravated pre[]existing back pain" did not provide evidence of aggravation of pre-existing cervical or lumbar pain), *with Molinar*, 2018-NMCA-011, ¶¶ 46-47 (reversing the WCJ's order finding that the worker did not suffer an aggravation injury when the expert testimony established that after the accident the worker experienced worsening pain that required a prescription, was unable to work within a shorter time period, and had decreased mobility).

## II.    Dr. Shields

**{20}** Worker similarly argues that the WCJ erred in finding that Dr. Shields' testimony regarding a causal connection between the accident and Worker's continuing right knee injury lacked a sufficient foundation and erred in sustaining Employer/Insurer's objection on the basis of foundation. Specifically, Worker challenges the WCJ's rejection of Dr. Shields' testimony on the bases that Dr. Shields: (1) did not treat Worker's knee complaints, (2) did not make any diagnosis regarding Worker's knees; and (3) was not

aware of MRI findings for Worker's knees. Worker additionally argues that "[t]here is no evidence in the record that the MRIs of Worker's knees was 'highly pertinent information' that was necessary for Dr. Shields to review in order for Dr. Shields to express an opinion regarding causation."

**{21}** When an employer or insurance carrier disputes whether "an alleged disability is a natural and direct result of [an] accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, . . . testifying within the area of his expertise." Section 52-1-28(B). "[T]he expertise of a treating physician is the training, experience and familiarity with the patient whom he or she is treating." *Grine v. Peabody Nat. Res.*, 2006-NMSC-031, ¶ 25, 140 N.M. 30, 139 P.3d 190 (internal quotation marks and citation omitted). "[I]f the expert who testifies lacks pertinent information, his or her opinion cannot satisfy the burden imposed by Section 52-1-28." *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 35, 134 N.M. 421, 77 P.3d 1014 (citing *Niederstadt v. Ancho Rico Consol. Mines*, 1975-NMCA-059, ¶ 11, 88 N.M. 48, 536 P.2d 1104).

**{22}** The WCJ concluded that Dr. Shields' testimony on the causation of Worker's knee complaints lacked sufficient foundation. We agree. In Dr. Shields' deposition, he testified that Worker did not describe "what part of her body she fell on" and that he did not diagnose Worker's right knee or provide any treatment to Worker for her right knee. In fact, Dr. Shields testified to the following regarding Worker's right knee: (1) his knowledge surrounding Worker's complaints about injuries to her right or left shoulder, her right or left hip, or her right or left foot was that he "vaguely remember[ed] that she had some issues with her hip and knees, and she wore knee braces, and she was seeing Dr. Garcia for her orthopedic complaints"; (2) Worker was referred to him because "she fell off the lift of a truck that she was unloading"; (3) Worker "complained of shooting pains in her legs and into the feet"; and (4) Worker "was contemplating having knee surgery." The WCJ also noted that, "[u]pon review of Dr. Shields' chart, [the doctor] was not aware of the MRIs findings for Worker's knees."

**{23}** Given Dr. Shield's testimony, we hold that the district court did not abuse its discretion in finding that Dr. Shields lacked the requisite familiarity with the circumstances surrounding Worker's right knee complaints to form an informed opinion regarding causation or in sustaining Employer/Insurer's foundation objection. *See Dewitt*, 2009-NMSC-032, ¶ 13 (applying an abuse of discretion standard when reviewing application of an evidentiary rule).

### III.    Legal Standard

**{24}** Finally, Worker argues that the WCJ erred in applying an incorrect legal standard when determining whether Worker met her burden of proof as to causation and, as a result, "incorrectly den[ied] Worker partial loss of use benefits and medical benefits for [Worker's] right knee injury." In support of this argument, Worker quotes an unpublished memorandum opinion from this Court, in which we stated, "[o]ur case law tells a WCJ to consider the facts and circumstances before him or her and to approach the question of

causation from a common sense perspective." *Levan v. Hayes Trucking & Concrete, Inc.*, No. A-1-CA-33858, mem. op. ¶ 19 (N.M. Ct. App. Dec. 23, 2015) (non-precedential). Worker thus argues that, "[f]rom a common-sense perspective," the testimony from Worker and the expert witnesses "is sufficient to establish that Worker suffered injuries to both her knees as a result of the . . . accident, and is entitled to medical care and disability benefits for the right knee as well as the left knee."

**{25}** Worker's reliance on *Levan* is misplaced. First, memorandum opinions are not precedent. *See* Rule 12-405(A) NMRA. Second, applying a "common sense perspective" does not change our conclusion that the expert testimony presented by Worker was vague, equivocal, and did not clearly establish causation in this case. As previously discussed, we affirmed the WCJ's findings and conclusions that the experts' testimony lacked foundation and were vague and equivocal, pursuant to prevailing New Mexico case law. *See Molinar*, 2018-NMCA-011, ¶¶ 21, 23, 25, 29, 31-46. The WCJ applied this established case law in its compensation order in denying Worker's request for worker's compensation benefits for her right knee. *Id.* We, therefore, hold that the WCJ applied the correct legal standard in determining that Worker did not meet her burden of proof as to causation, and we affirm the WCJ's conclusion that Worker did not present expert testimony demonstrating a causal connection between the accident and Worker's right knee complaints sufficient to prove a disability or permanent impairment to Worker's right knee.

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm.

**{27} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**BRIANA H. ZAMORA, Judge**