1997–NMCA–002

930 P.2d 816

**Donna L. BAERWALD, Plaintiff–Appellant,**

v.

**Patricia A. FLORES, Defendant– Appellee.**

No. 17160.

Court of Appeals of New Mexico.

Nov. 22, 1996.

Certiorari Denied Jan. 9, 1997.

Dennis P. Murphy, Montoya, Murphy & Garcia, Santa Fe, for plaintiff-appellant.

Thomas A. Simons, IV, Robert D. Sckalor, Simons, Cuddy & Friedman, L.L.P., Santa Fe, for Defendant–Appellee.

## OPINION

PICKARD, Judge.

1. This case requires us to determine whether the trial court abused its discretion by qualifying a biomechanical engineer to testify as an expert witness regarding causation of temporomandibular joint (TMJ) injuries. On the facts before us, we conclude that the trial court did not abuse its discretion in this ruling or in related evidentiary rulings.

## BACKGROUND AND ISSUES

2. This case arises out of an auto accident. The jury found that Defendant was negligent, but that the negligence did not cause Plaintiff's injuries. Accordingly, judgment was entered for Defendant. Plaintiff appeals alleging as error that: (1) the trial court abused its discretion by qualifying the biomechanical engineer as an expert; (2) NMSA 1978, Section 61–23–3(E) (Repl. Pamp.1993) requires that an engineer be licensed in New Mexico before he or she is competent to give expert testimony; (3) the trial court erred in allowing the engineer to give an opinion on medical causation; (4) the contents of an article upon which the witness relied were inadmissible hearsay; (5) the trial court should have admitted evidence in the form of correspondence that Defendant attempted to change the mind of another expert witness who evaluated Plaintiff at De-

fendant's request, but whose testimony was favorable to Plaintiff; (6) the trial court should have taken judicial notice and informed the jury of the New Mexico engineering statutes; and (7) the trial court improperly admitted an erroneous summary of Plaintiff's acupuncture records. We consolidate the first two and second two issues and discuss them at some length. We discuss the other issues more summarily. We affirm.

## FACTS

3. Plaintiff was driving west on Airport Road in Santa Fe when Defendant pulled out in front of her from an intersection. The vehicles collided, and Plaintiff claimed injuries as a result. Her complaint sought damages, including compensation for lost wages and medical bills resulting from injury to her temporomandibular joints. At trial, Plaintiff introduced expert testimony from her oral maxillofacial surgeon that the collision caused her TMJ injuries. Dr. Mark McConnell, another oral maxillofacial surgeon, who performed an independent medical examination at Defendant's request, also testified that Plaintiff's injuries resulted from the collision.

4. Defendant called two expert witnesses. One was Eugene Vander Pol of Comprehensive Medical Review, a California litigation support service. Mr. Vander Pol held himself out as an expert, not in any medical field, but in the field of biomechanical engineering. Over Plaintiff's objections to his general qualifications as well as to the specific subject of his testimony, the trial court qualified Mr. Vander Pol as an expert in the field of biomechanical engineering, and allowed Mr. Vander Pol to give his opinion that it was unlikely that Plaintiff's injuries resulted from a collision such as occurred in this case. Mr. Vander Pol based his opinion in part on an article by physicians who were also engineers. The article contended, based on an analysis of gravitational units or G-forces, that TMJ injuries could not result from rear-end collisions. Plaintiff unsuccessfully objected to a discussion of the article's contents through the testimony of Mr. Vander Pol, claiming a lack of foundation and hearsay.

5. Dr. Samuel Jacobson, a physician affiliated with the same litigation review service

as Mr. Vander Pol, also testified that Plaintiff's TMJ injuries were caused by pre-existing dental and degenerative processes, and not by the accident. The jury ultimately found for Defendant, and Plaintiff now appeals.

## DISCUSSION

### Expert Witness Qualifications

■ 6. "The rule in this State has consistently been that the admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico,* 116 N.M. 156, 169, 861 P.2d 192, 205 (1993). Nevertheless, the abuse of discretion standard is not a "rubber stamp" on the trial court's decision, and it does not prevent an appellate court from "conducting a meaningful analysis of the admission [of] scientific testimony[.]" *Id.* at 170, 861 P.2d at 206.

7. In conducting this analysis, we begin with NMRA 1996, 11–702. It states:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

The trial court qualified Mr. Vander Pol to testify on behalf of Defendant as an expert in the field of biomechanics. Plaintiff contends that the trial court erred because Mr. Vander Pol did not have sufficient qualifications principally because he was not licensed as an engineer under either the California statutes or the New Mexico statutes.

■ 8. Plaintiff relies primarily on Section 61–23–3(E) (defining the practice of engineering as including the giving of expert technical testimony) for the proposition that Mr. Vander Pol's lack of an engineer's license makes him ineligible to testify as an expert witness in any engineering field. The New Mexico Supreme Court governs the admissibility of evidence by procedural rules it adopts. *State ex rel. Reynolds v. Holguin,* 95 N.M. 15, 17, 618 P.2d 359, 361 (1980). The rules of evidence prevail if there is a variance between the rules and a statute. *Id.* NMRA 11–702 makes witness qualifications a question for the trial court, and we resolve any apparent conflict between that rule and the statute in the rule's favor. The trial court therefore did not err in qualifying the witness despite the language of Section 61–23–3(E).

9. Plaintiff also contends that Mr. Vander Pol's failure to be licensed anywhere is fatal to his qualification as an expert witness. An expert witness, however, may be qualified on foundations other than licensure under NMRA 11–702. *Madrid v. University of Cal.,* 105 N.M. 715, 717, 737 P.2d 74, 76 (1987). Mr. Vander Pol's qualifications as a biomechanical engineer included a bachelor's degree and a master's degree in mechanical engineering with emphasis in biomechanical engineering. He was licensed as an engineer intern in California. He testified that he performed research in the area of biomechanics, although it appeared that the research was limited to case work performed for the litigation review service for which he had worked for one year and to reading the scientific literature related thereto. Mr. Vander Pol testified that he had read almost all of the scientific literature on TMJ and he had specifically studied the biomechanics of TMJ. He had been qualified to testify as an expert in four states.

10. Given the foregoing evidence, we cannot hold that the trial court abused its discretion in determining that Mr. Vander Pol was qualified to testify as an expert in biomechanics. *See Shamalon Bird Farm, Ltd. v. United States Fidelity & Guar. Co.,* 111 N.M. 713, 714, 809 P.2d 627, 628 (1991) (trial court has wide discretion to determine whether witness is qualified to testify as an expert); *Smith v. Smith,* 114 N.M. 276, 281, 837 P.2d 869, 874 (Ct.App.1992) (no set criteria can be laid down to test qualifications of expert). Considering Mr. Vander Pol's graduate degree in engineering and practice in the field, the trial court could reasonably determine that he possessed knowledge and experience that would assist the jury in understanding the biomechanical aspects of this case. *See* NMRA 11–702.

11. Mr. Vander Pol testified extensively on the amount of force exerted on the human body by the accident expressed in terms of G-forces. He based this testimony on his study of biomechanics and engineering. He testified about the weights and speeds of the vehicles involved and extrapolated his information based on pictures of the vehicles and the amount of damage done by the accident. This was proper testimony, and Plaintiff does not challenge it except on the grounds of lack of qualifications generally.

*Substance of Expert Witness Testimony*

12. Plaintiff does, however, vigorously challenge Mr. Vander Pol's opinion that the accident did not likely cause her TMJ injuries. The issue we address is whether that opinion is prohibited by the general rule that expert testimony must be helpful to the jury in terms of the relevance, reliability, and validity of the testimony, *see Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589–95, 113 S.Ct. 2786, 2794–98, 125 L.Ed.2d 469 (1993), or the specific rule that nonmedical experts cannot testify on issues of medical causation, *see Woods v. Brumlop,* 71 N.M. 221, 225, 377 P.2d 520, 523 (1962) (cause and effect of a physical condition lies in a field in which only medical expert can give competent opinion).

13. First, in her brief in chief, Plaintiff contends it was error to allow Mr. Vander Pol to testify that, in his opinion, it was extremely unlikely that *Plaintiff* could have sustained *her* TMJ injury in this motor vehicle collision. Mr. Vander Pol never testified that it was unlikely this accident caused the Plaintiff her TMJ injuries, because the trial judge did not allow him to so testify.

14. The testimony was:

Q. Do you have an opinion as to whether this accident caused Ms. Baerwald's claim for TMJ injury?

A. Yes I do.

OBJECTION, your honor.

COURT. Go ahead with your question, sir.

Q. What is your opinion?

OBJECTION, your honor.

CT. I ask you to rephrase the question as to whether an accident such as this could cause TMJ injury, not specific to Ms. Baerwald since he has not examined her.

Q. Mr. Vander Pol, could an accident, such as the one Ms. Baerwald was involved in, could it have ... could it cause a TMJ injury?

A. It's extremely unlikely....

15. Contrary to Plaintiff's contention, it is clear from the testimony that the trial court limited Mr. Vander Pol's opinion to his area of expertise, that is, the effects of forces on the human body, and refused to allow him to offer an opinion as to the causation of Ms. Baerwald's specific injury by this particular accident.

16. Second, in making our determination, we also note that our Supreme Court, in *Madrid,* 105 N.M. at 716, 737 P.2d at 75, said: "It is common knowledge that frequently those most knowledgeable in biomechanics, relating to the relationship between trauma and injury, are Ph.D.'s, not M.D.'s." Courts in other jurisdictions have admitted expert testimony by biomechanical engineers on the causation of various injuries. *See Arnold v. Riddell, Inc.,* 882 F.Supp. 979 (D.Kan.1995) (biomechanical engineer testified about causation of quadriplegia from various forces, including effect of particular football helmet); *Dorsett v. American Isuzu Motors, Inc.,* 805 F.Supp. 1212 (E.D.Penn.) (biomechanical engineer testified as to type of injuries caused by rollover of vehicle), *aff'd,* 977 F.2d 567 (3rd Cir.1992).

17. In this case, when Defendant tendered Mr. Vander Pol's opinion about the causation of TMJ injuries, Plaintiff objected that allowing Mr. Vander Pol to so testify would be "junk science" and would violate the rule prohibiting nonmedical witnesses to testify as to medical causation. The trial court noted that Plaintiff had presented no evidence that biomechanical engineering was junk science, and Mr. Vander Pol himself testified that part of the biomechanical engineering he practiced was the study of the causation of various types of injuries. In addition, Mr. Vander Pol testified that he had "read pretty much all the literature that's out there on the biomechanics of the

TMJ and talked to physicians, biomechanical physicians on the TMJ." In light of the testimony and in light of the cases indicating that biomechanical experts may testify about the relationship between trauma and injury, we cannot say that the trial court did not carefully perform its gatekeeping functions. Accordingly, we cannot say that the trial court erred in allowing Mr. Vander Pol to state his opinion as to whether the accident in question was capable of producing a TMJ injury of the type claimed by Plaintiff.

■ 18. We next turn to Plaintiff's contention that the trial court erred in admitting Mr. Vander Pol's discussion of a medical article, which *no medical expert said was authoritative*. The thesis of the article, as explained by Mr. Vander Pol, is that it is unlikely for accidents creating low G-forces to cause TMJ when ordinary chewing creates 115 Gs. Mr. Vander Pol's testimony was that the accident at issue here exposed Plaintiff to 5.6 Gs. Plaintiff contends that Mr. Vander Pol's testimony in this regard resulted in the introduction into evidence of inadmissible hearsay. In our view, the admissibility of Mr. Vander Pol's testimony about the article is dependent on his qualifications to testify as an expert witness on the causation of TMJ injuries. If he was not qualified, it would follow that the contents of the article upon which he relied should not have been admitted in any fashion through his testimony. If, however, he was qualified, then he is permitted to both testify as to the foundation for the article under NMRA 1996, 11–803(R) (learned treatises) and testify about the article as explaining the basis for his opinion under NMRA 1996, 11–703. Under NMRA 11–803(R), expert witnesses may establish as reliable articles in periodicals that are called to their attention on direct examination, and then such articles are admissible as learned treatises notwithstanding their hearsay nature. Under NMRA 11–703, the expert may rely on an article because it is the expert who determines, based on study and experience, whether the article is reliable and therefore the article becomes, in effect, the expert's own opinion. *See Mannino v. International Mfg. Co.*, 650 F.2d 846, 851–53 (6th Cir.1981).

19. This case is not like *Sewell v. Wilson*, 101 N.M. 486, 488–90, 684 P.2d 1151, 1153–55 (Ct.App.), *cert. quashed*, 101 N.M. 362, 683 P.2d 44 (1984), and cases cited therein, relied on by Plaintiff. In those cases, the nontestifying experts' letters expressing opinions in the particular cases were actually admitted into evidence. Moreover, at least in *Sewell*, there was no testimony that the testifying expert relied on the document. *Id.* Here, in contrast, the article was a general article, Mr. Vander Pol testified that he relied on it, and the article itself was not admitted into evidence.

*Other Issues*

■ 20. We now turn to Plaintiff's remaining claims, all of which are evidentiary issues. The general standard of review for these issues is abuse of discretion. *City of Santa Fe v. Komis*, 114 N.M. 659, 663, 845 P.2d 753, 757 (1992). First, Plaintiff asked the trial court to take judicial notice of the New Mexico engineering statutes, and to inform the jury of their content, in order to show Mr. Vander Pol's lack of qualifications. Under NMRA 1996, 11–403, the trial court may exclude relevant evidence if its cumulative nature would substantially outweigh its probative value. Plaintiff had the opportunity to attack, and did attack, Mr. Vander Pol's qualifications on these grounds during voir dire of the witness in the jury's presence and on cross-examination. The witness testified in front of the jury that he was not registered as an engineer in New Mexico and testified extensively about California's requirements. The trial court specifically noted this testimony and commented that the jury did not need to see the statutes. The trial court could therefore properly deny the requests for judicial notice and introduction into evidence of the statutes as calling for cumulative evidence. Thus, refusal of Plaintiff's requests was not an abuse of discretion.

■ 21. Plaintiff also contends that the trial court improperly excluded evidence in the form of correspondence that Defendant had tried to persuade Dr. McConnell, an oral maxillofacial surgeon who would testify favorably to Plaintiff, to change his mind. Here again, Plaintiff had ample opportunity

to accomplish what she wanted through direct examination. Plaintiff did point out through examination that Defendant sent Mr. Vander Pol's report and the article to Dr. McConnell and questioned whether these documents would change his opinion on the issue of causation. The letters themselves, that Plaintiff wanted to introduce, contained prejudicial references to insurance. We hold that the trial court also properly found this evidence cumulative, and did not abuse its discretion in excluding the correspondence. To the extent that Plaintiff was precluded from showing that Dr. McConnell prepared his opinion at Defendant's request, we do not think that the minimal probative value that such evidence may have had in showing that Dr. McConnell was not biased in favor of Plaintiff made exclusion of this evidence reversible error. *See* NMRA 11–403.

22. Last, Plaintiff complains that the trial court improperly admitted an inaccurate summary chart of Plaintiff's acupuncture records as substantive evidence because the chart omitted references to Plaintiff's jaw pain. NMRA 1996, 11–1006 states:

The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Central to Plaintiff's argument is that Defendant laid no foundation for admission of the chart. Nevertheless, NMRA 1996, 11–901(B)(3) allows for authentication of evidence through "[c]omparison by the trier of fact or by expert witnesses with specimens which have been authenticated." The trial court could properly have found the chart authentic by comparing it with the acupuncture records already in evidence, and thus there was a proper foundation for admission of the chart.

23. As for Plaintiff's claim that the chart was "erroneous" for leaving out her complaints of jaw pain, we do not believe that the chart was erroneous. The chart was titled "From Records of Southwest Acupuncture"

and was a list of each of the dated records with a summary of Plaintiff's complaints. Consistent with the actual records, the third entry states "pain on both sides of jaw (from accident)." Plaintiff's claimed inaccuracy is that the chart summary does not contain reference to the undated first page of the records, which also refers to jaw pain from the accident. Because the chart does not purport to be complete, because it does refer to jaw pain on Plaintiff's third visit, and because the actual records were before the jury and could have been pointed out by Plaintiff, we do not believe that her claim of erroneous information has merit. *See Coates v. Johnson & Johnson,* 756 F.2d 524, 550 (7th Cir.1985).

24. Moreover, under these circumstances, any dispute about the accuracy of the summary would go to the weight and credibility of the summary, not its admissibility. *See In re Richardson–Merrell, Inc. Bendectin Prods. Liab. Litig.,* 624 F.Supp. 1212, 1225 (S.D.Ohio 1985), *aff'd,* 857 F.2d 290 (6th Cir. 1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *accord Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 515 n. 9 (9th Cir.1985) (inaccuracies in summaries under Federal Rule 1006 may be brought out on cross-examination), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990); *see also* 29A Am. Jur.2d *Evidence* § 1067 (1994) (summaries admissible even if inaccurate); John P. Ludington, Annotation, *Admissibility of Evidence Summaries Under Uniform Evidence Rule 1006,* 59 A.L.R.4th 986 § 14 (1988) (discrepancy between underlying documents and summary goes to credibility, not admissibility). Furthermore, the fact that the summary in question here was merely a summary of documents that were already before the jury, rather than of evidence that had not been admitted, weighs heavily in favor of the trial court's decision. *See Harris Mkt. Research v. Marshall Mktg. & Communications, Inc.,* 948 F.2d 1518, 1525 (10th Cir. 1991). The trial court did not abuse its discretion in allowing the summary chart of Plaintiff's acupuncture records to be admitted into evidence.

**686**

*CONCLUSION*

25. The judgment is affirmed.

26. **IT IS SO ORDERED.**

APODACA, C.J., and DONNELLY, J., concur.