This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JESSICA SANDERS,**

Plaintiff-Appellant,

v.                                                                      **No. A-1-CA-35051**

**MARGERY PRUETT and**
**TOM PRUETT,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Shoobridge, District Judge**

Barber & Borg, LLC
Scott E. Borg
Albuquerque, NM

for Appellant

O'Brien & Padilla, P.C.
Alicia M. Santos
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Plaintiff Jessica Sanders appeals from the district court's judgment on a jury's verdict in favor of Defendants, arguing that the district abused its discretion by denying her pretrial motion to exclude the testimony of Defendants' expert concerning the severity of the impact of a low-speed motor vehicle collision on the human body. We affirm.

**BACKGROUND**

**{2}** Plaintiff sued Defendants Margery Pruett and her father, Tom Pruett, for injuries she claims to have suffered to her head, neck, and back when Defendant Margery Pruett rear-ended Plaintiff's vehicle at a low speed while Plaintiff was stopped at a traffic signal. Defendants retained Ronald Feder, a civil engineer and accident reconstructionist, as an expert "to evaluate the [likely] severity of the impact, the type of occupant motion that would be expected in this type of collision based on simple physics and crash tests" and to present the jury with "crash tests of similar severity" and "the resulting occupant movement." Plaintiff moved to exclude Feder arguing that he was not qualified to offer expert testimony on biomechanical issues and that his testimony would be unreliable, misleading, and of no assistance to the jury because it lacked a sound basis. Defendants opposed the motion. At the motion hearing, Plaintiff also objected to the admission of the photographs depicting the condition of the vehicles after the collision, arguing that they were unfairly prejudicial.

**District Court's Order Denying Plaintiff's Motion**

{3}     The district court denied Plaintiff's motion in a written order issued after a hearing. The court found that Feder is an expert in accident reconstruction, a field that "includes low[-]speed collisions, occupant movement, severity and human volunteer testing results in low[-]speed rear-end collisions[,] . . . the impact of low-speed collisions on the human body and how the human body would likely react inside a vehicle." The court's order included Feder's background experience with "the impact of low-speed collisions on the human body, including both participating in [volunteer] testing and reviewing tests." It explained the nature and scope of Feder's analysis and proposed testimony as including: "the severity of the collision or delta-V"; the movement of the occupant in the vehicle "that would be expected in this type of collision based on simple physics and crash test[s]"; and occupant movement resulting from crash tests of similar severity. The court concluded that Feder's training and background and his examination of pictures of Plaintiff's vehicle and inspection of the damage to Defendant's vehicle gave Feder "knowledge and experience that would assist the jury in understanding the likely speed of the collision, the amount of force exerted on the human body by the accident and the likely type of movement that would have occurred to the occupant inside the vehicle based upon delta-V forces." The district court also found that as

long as a proper foundation for the photographs of the vehicles was laid at trial, they would be admissible.

**Feder's Qualifications**

{4} Defendants conceded that Margery Pruett was negligent, leaving the jury to decide whether that negligence caused Plaintiff's claimed injuries and damages. Dr. Michael Freeman provided an affidavit in support of Plaintiff's motion to exclude Feder's testimony, and his deposition testimony was read into the record at trial. Dr. Freeman essentially disagreed with Feder's opinions, was critical of Feder's reliance on human volunteer crash studies, and was adamant that Feder was actually expressing a medical opinion for which he was not qualified.

{5} Feder's résumé, provided before trial and admitted at trial as an exhibit, listed his educational background, professional licenses, work experience, specialized training and continuing education, professional organizations and honors, and his presentations on low-speed collisions. Feder's résumé identified training programs, conferences, certification courses where he received training in biomechanics of frequently claimed injury areas, performance of low-speed crash testing and analysis, biomechanical analysis, delta-V (speed change) data and comparison with crash test data, collision trauma biomechanics, and analysis of low-speed collisions biomechanics.

**Feder's Trial Testimony**

4

{6}     Feder testified at trial that he has twenty-five years of experience as an accident reconstruction specialist and has received accreditation through the Accreditation Commission for Traffic Accident Reconstruction (ACTAR), has taken a number of specialized courses in accident reconstruction, and is familiar with peer-reviewed publications involving low-speed, rear-end motor vehicle accidents. Feder explained accident reconstruction to the jury. He further explained that accident reconstruction of low-speed collisions includes an analysis of vehicle dynamics and occupant motion within the affected vehicle.

{7}     Feder described the type of testing he has conducted on low-speed collisions and his evaluation of those collisions and their injury potential, particularly occupant movement in the vehicles in these collisions. He also described his personal participation as a subject in low-speed crash testing. Feder testified about his training in crash testing through the Texas Association of Accident Reconstruction Specialists (TAARS) and the Society of Accident Reconstructionists (SOAR). He is a member of both organizations, among others. His training through TAARS and SOAR consisted of the practical application of biomechanics, low-speed crash tests, and analysis. Feder explained to the jury his simple definition of biomechanics as the evaluation of forces acting on the human body. He clarified that he should not be called a "biomechanical engineer" because he is an accident reconstructionist who has some expertise, training, and

5

experience in biomechanics. On cross-examination, Feder explained that there is no clear line between accident reconstruction and biomechanics as there are things that are done in accident reconstruction that cross over into biomechanics. Feder testified that he has been qualified to give opinion testimony in state district courts and federal district courts on the subject of low-speed impacts, vehicle dynamics, and occupant motion.

{8}     Feder opined that the severity of this collision is related to the change in speed of Plaintiff's vehicle, and based on the evidence and his education, training, and experience, he further opined that the change in speed of Plaintiff's vehicle was between two and one-half miles per hour to five miles per hour. Assuming this speed change, and assuming that the occupant was restrained and had a headrest, Feder opined that within a reasonable degree of probability, there was no mechanism of injury to the occupant.

{9}     Feder inspected Defendants' vehicle but was unable to inspect Plaintiff's vehicle because it was unavailable. Feder's lack of access to Plaintiff's vehicle did not affect his opinion. He explained that the severity of a crash is measured by the change in speed, or the delta-V, as that is what "really causes injury". He further explained how he determined the speed change. He discussed the use of all published crash tests as part of the analysis that helped him evaluate and narrow down the window to determine the speed change.

6

{10} Using published graphics, Feder showed the jury examples of occupant movement relative to the vehicle seat in low-speed, rear-end collisions. He also showed the jury videos of human subject testing at various speed changes. Feder explained the concept of "rebounding," which is when "the movement of the vehicle forward causes the occupant to move rearward, relative to the vehicle, . . .then the seat tends to try to spring back and so there's some rebound of the occupant forward." He also testified that at a speed change of two and one-half miles per hour to five miles per hour, he would not expect the occupant of the front vehicle to strike their head on the steering wheel of their vehicle, as Plaintiff claimed. He discussed peer-reviewed literature comparing the severity of collisions and the severity of impacts that people endure while engaging in everyday activities.

{11} Feder then testified about peer-reviewed studies concerning the potential for injury to occupants in a rear-end collision similar to the case at hand. He explained that the peer-reviewed literature suggests that vehicle occupants can tolerate a change in speed of five miles per hour or less and opined based on the evidence, his education, training, and experience that within a reasonable degree of probability, there was no mechanism for injury with a speed change of two and one-half miles per hour to five miles per hour as a result of a rear-end collision, assuming the occupant is restrained and has a headrest.

7

{12} The jury returned a verdict for Defendants. On appeal, Plaintiff argues, as she did below, that Feder's testimony was inadmissible because it did not meet the requirements for admitting expert testimony set forth in Rule 11-702 NMRA and the case law interpreting it, and that the district court's decision to admit this testimony "was severely prejudicial to [P]laintiff's case, justifying reversal and a new trial." She also argues that the district court's decision to admit photographs of the vehicles was contrary to Rule 11-403 NMRA and was "prejudicial error." For the first time on appeal, Plaintiff also argues that the photographs were cumulative evidence and were confusing or misleading to the jury.

**STANDARD OF REVIEW**

{13} We review a trial court's decisions to admit or exclude evidence, including expert testimony, for an abuse of discretion. *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. An abuse of discretion occurs where "the trial judge's action was obviously erroneous, arbitrary, or unwarranted" or is "clearly against the logic and effect of the facts and circumstances before the court." *Id.* ¶ 63.

**DISCUSSION**

{14} The admissibility of expert testimony is governed by Rule 11-702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

8

> opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

*Id.*; *see Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 11, 149 N.M. 140, 245 P.3d 585 (noting that our Supreme Court has explained that "Rule 11-702 establishes three prerequisites for admission of expert testimony: (1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of scientific, technical, or other specialized knowledge in which they are qualified." (internal quotation marks and citation omitted).

**{15}** Plaintiff argues that Feder's testimony fails all three requirements and that the district court "abdicated its gatekeeping duty by failing to analyze how Feder's testimony satisfied the three-part test for admissibility." We disagree. While the district court's order did not separately analyze each of the rule's requirements in discussing the admissibility of Feder's testimony, the transcript of the motion hearing reflects the district court's understanding of its function and the significance of the decision to be made. In its order denying Plaintiff's exclusion motion, the district court sets forth the bases for the court's admissibility determination, which comports with the law. On this record, we cannot say that the district court abused its discretion in denying Plaintiff's motion to exclude Feder's testimony.

9

**The District Court Did Not Abuse Its Discretion**

{16} Plaintiff describes the "crux of this case" as "whether accident reconstructionists can testify as experts in biomechanical engineering about injuries to persons in motor vehicle crashes." Her central argument is that Feder's expertise makes him qualified him to testify only about how a collision occurred and that Feder should not have been allowed to testify about the likely effect on a person occupying a vehicle rear-ended at a low speed because only an expert in biomechanics or medicine is qualified to give such opinions. She appears to assume that only a person holding a degree or certification in biomechanics or medicine is qualified to give such testimony. Plaintiff complains in particular about Feder's testimony that "there was no 'mechanism of injury' in a crash like this." According to Plaintiff, "[e]ven if Mr. Feder qualified as an expert in accident reconstruction, that did not establish his expertise in the 'relevant field' of biomechanics and his testimony regarding the lack of 'mechanism of injury' clearly exceeded the scope of his qualifications as an accident reconstructionist." To the extent Plaintiff relies on the disagreement of her own expert with Feder's methods and opinions, she provides no authority to support the argument that this required exclusion of Feder's testimony. We therefore assume that no such authority exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d

10

482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{17} As noted previously in laying out Feder's trial testimony, his qualifications and foundation were presented to the district court and confirmed in that testimony. His trial testimony, particularly concerning the mechanism of injury, confirmed that Feder did not exceed the limits of his qualifications and the foundation presented to the district court. As discussed below, under our precedents it was not necessary for Feder to have a degree in biomechanics, since the prerequisites of Rule 11-702 were satisfied by his education, training, and experience.

{18} The jury heard testimony from both Feder and Dr. Freeman, and it was for the jury to weigh the evidence and to accept or reject the expert testimony of Feder and Dr. Freeman in whole or in part. *See Chapman v. Jesco, Inc.*, 1982-NMCA-144, ¶ 3, 98 N.M. 707, 652 P.2d 257 ("The fact[-]finder may reject expert opinion evidence in whole or in part.").

**Both Parties' Reliance on *Baerwald v. Flores***

{19} Both Plaintiff and Defendants rely on *Baerwald v. Flores*, 1997-NMCA-002, 122 N.M. 679, 930 P.2d 816, in support of their respective arguments. In *Baerwald*, this Court held that the trial court did not abuse its discretion in determining that an expert witness with a graduate degree in engineering and practice in the field was qualified to testify as an expert in biomechanics in a case

11

involving a motor vehicle collision and "possessed knowledge and experience that would assist the jury in understanding the biomechanical aspects of th[e] case." *Id.* ¶ 10 (citing Rule 11-702). We characterized as "proper testimony" expert witness's opinion "on the amount of force exerted on the human body by the accident expressed in terms of G-forces" based on "his study of biomechanics and engineering" and his extrapolation of information "based on pictures of the vehicles and the amount of damage done by the accident." *Id.* ¶ 11. We concluded that expert witness's trial testimony, which included an opinion about whether the collision at issue was capable of producing injury of the type claimed by the plaintiff, *see id.* ¶ 18, was limited to "his area of expertise, that is, the effects of forces on the human body[.]" *Id.* ¶ 15.

{20}     The expert witness's qualifications, in that case, did include "a bachelor's degree and a master's degree in mechanical engineering with emphasis in biomechanical engineering." *Id.* ¶ 9. The plaintiff argued that expert witness's failure to hold an engineer's license disqualified him from testifying as an expert witness in any engineering field. *Id.* ¶¶ 8, 9. This Court noted that an expert witness "may be qualified on foundations other than licensure [pursuant to Rule] 11-702." *Baerwald*, 1997-NMCA-002, ¶ 9. In concluding that the trial court did not abuse its discretion "in determining that [the expert witness] was qualified to testify as an expert in biomechanics[,]" we cited cases from our Supreme Court

12

noting the trial court's "wide discretion to determine whether [a] witness is qualified to testify as an expert" and that "no set criteria can be laid down to test [the] qualifications of [an] expert." *Id.* ¶ 10.

{21} Plaintiff distinguishes *Baerwald* by arguing that the expert in that case had both a bachelor's degree and a master's degree in mechanical engineering with an emphasis in biomechanical engineering. Plaintiff argues that, unlike the experts in *Baerwald*, Feder is not a biomechanics expert and is not qualified to testify about a lack of mechanism of injury based on vehicle speeds and photographs showing damage to the vehicles resulting from the collision.

{22} Defendants argue that the backgrounds of the *Baerwald* expert and Feder are comparable. It is clear that the testimony elicited from defense counsel limited Feder's opinion to his area of expertise—accident reconstruction and the effects of forces on the human body. Contrary to Plaintiff's argument, there was no opinion testimony about the causation of Plaintiff's specific injuries as a result of this motor vehicle accident.

{23} Plaintiff also cites to various out-of-jurisdiction authorities in support of her arguments. Because we find *Baerwald* controlling, we need not consider outside authorities. *See Gulbransen v. Progressive Halcyon Ins. Co.*, 2010-NMCA-082, ¶ 13, 148 N.M. 585, 241 P.3d 183; *see also* Rule 12-405(C) NMRA (stating that a formal Court of Appeals opinion is controlling authority).

13

{24} The district court's decision is also supported by our decision in *State v. Vigil*, 1985-NMCA-110, ¶ 17, 103 N.M. 643, 711 P.2d 920, where we held that an accident reconstructionist could testify about the movement of bodies within a vehicle provided that he had the specialized knowledge, education, and experience to do so. We rejected the defendant's contention that expertise in accident reconstruction "has no bearing" on the "ability to give an expert opinion as to the movement of bodies within the vehicle." *Id.* ¶¶ 13, 17. We held that the trial court did not abuse its discretion in determining that "the field of accident reconstruction requires specialized knowledge in a number of fields," the accident reconstructionist "was qualified as an expert pursuant to his knowledge, background[,] training[,] . . . [and] wealth of experience," which included "training and knowledge of physics and engineering[.]" *Id*. ¶¶ 14, 16. On the qualification issue, we held:

> The trial court determined that the testimony of an accident reconstructionist would aid the jury and that [the accident reconstructionist] was qualified to give an expert opinion as to the movement of bodies within the vehicle. In considering the foundational information elicited from the witness, the trial court was justified in finding the witness qualified to testify as to the movement of bodies. Accordingly, we affirm the trial court's admission of the testimony of the state's accident reconstructionist. The court does not today decide that every "accident reconstructionist" will automatically be qualified to testify as to the movements of human bodies within a motor vehicle. *Rather, the court rules that an accident reconstructionist shown to be possessed of the education and experience necessary to form an opinion on such movement may properly be admitted to testify.*

14

*Id.* ¶ 17 (emphasis added).

{25}    In view of the foregoing, we see no basis for concluding that the district court abused its discretion in determining that Feder was qualified to testify as an expert concerning the severity of the collision, the likely movement of a person inside the vehicle resulting from a collision such as the one at issue here, and the likelihood that the occupant of a vehicle would sustain injuries of the type Plaintiff claims as a result of a low-speed vehicle accident. The record supports the district court's determination that Feder's testimony was admissible and that Feder's trial testimony was limited to his area of expertise. As in *Baerwald* and *Vigil*, Feder's testimony about the likely severity of the collision and the type of occupant motion expected in this type of collision was admissible based on his extensive experience, knowledge, background, and training, despite his lack of a degree in biomechanics.

{26}    Plaintiff's arguments that Feder's opinions lack a reliable basis also provide no basis for concluding that the district court abused its discretion in denying Plaintiff's motion to exclude his testimony. Plaintiff's contention that the district court must make a reliability determination on the record relies on federal cases that are not controlling. In any event, Plaintiff's contention that Feder's testimony was not reliable and would not assist the jury also relies primarily on Plaintiff's assumption about the qualifications necessary to give the opinions at issue and the criticisms of Plaintiff's expert of Feder's qualifications and the studies on which he

15

relied. We are satisfied that the record contains evidence of the data and materials upon which Feder relied for his opinions, which include peer-reviewed publications discussing tests of low-speed, rear-end collisions and occupant movement in such collisions.

**The Photographs of the Motor Vehicles Were Properly Admitted Into Evidence**

{27} Plaintiff argues that the photographs of the motor vehicles involved in the collision were inadmissible under Rule 11-403 because she conceded that the accident occurred at a low speed, and, therefore, argues that the photographs constituted "needless[] present[ation of] cumulative evidence." Plaintiff also argues that the photographs misled the jury into thinking that the minimal amount of property damage meant there was no injury. The photographs were relevant to Feder's testimony. *See* Rule 11-401(A) NMRA (stating that the evidence only needs to have a "tendency to make a fact more or less probable than it would be without the evidence"). Because of the unavailability of Plaintiff's vehicle four years after the motor vehicle accident, it was necessary for Feder to rely on those photographs in formulating his opinion.

{28} While the photographs' depiction of the minimal damage to the vehicles is counter to Plaintiff's theory of the case, that does not make the photographs unfairly prejudicial. Rule 11-403 allows for the exclusion of evidence only "if its

16

probative value is *substantially outweighed* by a danger of . . .unfair prejudice . . . or needlessly presenting cumulative evidence[,]" among other reasons. *Id.* (emphasis added); *see State v. Hogervorst*, 1977-NMCA-057, ¶ 46, 90 N.M. 580, 566 P.2d 828 (stating that the mere fact that competent evidence may tend to prejudice a party is not grounds of exclusion of that evidence). The district court did not abuse its discretion in admitting those photographs into evidence.

**CONCLUSION**

{29}    Based on the foregoing, we conclude that district court did not abuse its discretion in denying Plaintiff's motion to exclude the expert testimony of Feder or in the admitting the photographic evidence. We therefore affirm the district court's judgment.

{30}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**I CONCUR:**

_____
**EMIL J. KIEHNE, Judge**

**LINDA M. VANZI, Chief Judge (concurring in result only).**

17