This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**NORMAN CUTLIFF,**
**Plaintiff-Appellant,**
**v.**
**VIS-COM, INC. and JAMES HANCOCK,**
**Defendants-Appellees.**

Docket No. A-1-CA-35601
COURT OF APPEALS OF NEW MEXICO
March 11, 2019

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY, Jeff Foster McElroy, District Judge

**COUNSEL**

Atkins & Walker, P.C., Tyler J. Atkins, Samuel H. Walker, Albuquerque, NM, for Appellant

Doughty, Alcaraz & deGraauw, P.A., John Andrew deGraauw, Jeffrey M. Mitchell, Albuquerque, NM, for Appellees

**JUDGES**

BRIANA H. ZAMORA, Judge. WE CONCUR:  LINDA M. VANZI, Judge, MEGAN P. DUFFY, Judge

**AUTHOR:** BRIANA H. ZAMORA

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}** Appellant Norman Cutliff appeals the district court's decision admitting expert testimony that he claims exceeded the scope of the expert's qualifications and lacked a reliable evidentiary basis. Cutliff further contends the district court abused its discretion by failing to admit his medical records and denying his motions for mistrial. We affirm.

**BACKGROUND**

**{2}** Cutliff claims to have suffered concussion symptoms and neck and low back pain after being rear-ended by a vehicle driven by James Hancock, who was driving for his employer, Vis-Com, Inc. (collectively, Vis-Com), while Cutliff was stopped at a red light behind another vehicle. Cutliff filed a complaint alleging negligence against Vis-Com seeking damages for lost wages, pain and suffering, loss of household services, and loss of enjoyment of life. Vis-Com ultimately stipulated to liability, but disputed causation and damages.

**{3}** Prior to trial, Cutliff filed a motion to exclude the testimony of defense expert Dr. Joseph Peles, arguing that his opinion lacked a reliable basis and that Dr. Peles was not qualified to offer an opinion on medical causation.[1] The district court denied the motion, ruling orally that biomechanical engineering is a recognized field, Dr. Peles' testimony would assist the jury, and that Cutliff would have the opportunity to cross-examine Dr. Peles on the claimed lack of data supporting his conclusions. The district court's written order denying Cutliff's motion stated no additional grounds in support of its ruling.

**{4}** At trial, Dr. Peles was qualified, without objection, as an expert in biomechanical engineering, occupant dynamics, and accident reconstruction. Dr. Peles explained that a biomechanical engineer looks at the forces resulting from an accident and determines how those forces move the body and, based on that movement, determines the potential for injury. Dr. Peles testified that he reviewed photographs, deposition testimony, discovery responses, police reports, Cutliff's medical records, and Cutliff's notes, along with data related to vehicle crashes, dimensions and weight, and stiffness. He acknowledged he was not qualified to render opinions on the medical causation of a specific injury, but opined that, assuming the most severe impact that could result from this accident, it is highly unlikely Cutliff's head would have contacted the steering wheel, and the forces to the head would be exceptionally low and unlikely to produce a concussion. Dr. Peles also explained that it is unlikely that the force to the back would trigger an injury mechanism, and stated there is a "99.9 percent chance that someone would not have a low back injury from this worst-case severity." When asked on cross-examination about his statement that there is "no mechanism . . . for a head injury or a low back injury," Dr. Peles responded, "We talked in my deposition about degeneration in the low back. That's a likely candidate for that." Cutliff's counsel responded, "You're not offering the jury an opinion that Mr. Cutliff has degenerative back disease, are you?" Peles replied, "Well, it's clear from his medical records. I'm not diagnosing him, but he clearly does." Dr. Peles explained that "biomechanical engineers study the progression of degeneration [of the back] and how compression causes [it]," but when asked again if he was qualified to diagnose degenerative back disease, he responded, "I didn't say I was. You were asking me from a biomechanical viewpoint."

**{5}** Dr. Peles also testified that the front bumper of Cutliff's vehicle had more damage than the rear of his vehicle. When asked if this had any significance, he responded, "It

---

1 Cutliff does not dispute Dr. Peles' qualifications as a biomechanical engineer.

certainly could. It is . . . consistent with [Cutliff's vehicle] contacting [the first vehicle] first. I can't prove that without seeing [the first vehicle]." Cutliff's counsel objected and moved for a mistrial because Vis-Com had stipulated to liability before trial on the basis that Hancock was solely at fault for the crash. The district judge denied the motion but sustained the objection and instructed the jury to disregard this testimony.

**{6}** In his closing argument to the jury, Vis-Com's attorney argued, "One other thing I think is really important for you guys to pay attention to—not a single medical bill is being submitted to you. Not a single one." Cutliff objected based on the parties' stipulation before trial that medical bills would not be introduced. The judge sustained the objection and instructed the jury to disregard this argument.

**{7}** The jury returned a verdict in favor of Cutliff for $10,000. This appeal followed.

## DISCUSSION

### A. The District Court Did Not Abuse Its Discretion in Determining That Dr. Peles' Expert Testimony Was Admissible

### 1. Admissibility of Expert Testimony

**{8}** This Court reviews the admission of expert testimony for an abuse of discretion. *See Baerwald v. Flores*, 1997-NMCA-002, ¶ 6, 122 N.M. 679, 930 P.2d 816. An abuse of discretion occurs where "the trial judge's action was obviously erroneous, arbitrary, or unwarranted" or is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Alberico*, 1993-NMSC-047, ¶ 63, 116 N.M. 156, 861 P.2d 192.

**{9}** Rule 11-702 NMRA governs the admissibility of expert testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

*See Acosta v. Shell W. Expl. & Prod., Inc.*, 2016-NMSC-012, ¶ 22, 370 P.3d 761 (stating Rule 11-702 requirements).

**{10}** Cutliff contends that the district court abused its discretion in admitting Dr. Peles' testimony, arguing that the testimony (1) lacked a reliable basis and (2) exceeded the scope of Peles' expertise as a biomechanical engineer. We address each argument in turn.

### 2. Dr. Peles' Opinion Had a Reliable Basis

**{11}** Cutliff contends that Dr. Peles' testimony did not rest upon a reliable basis because it lacked a sufficient factual foundation. To be admissible, expert testimony must be based on facts sufficient to permit a reasonably accurate conclusion, as opposed to mere conjecture. *State v. Downey*, 2008-NMSC-061, ¶ 32, 145 N.M. 232, 195 P.3d 1244. Experts may base their opinions upon factual assumptions only if those assumptions have an evidentiary foundation in the record. *Id.* ¶ 34.

**{12}** According to Cutliff, Dr. Peles' testimony lacked a reliable basis because Dr. Peles failed to do the following: personally inspect the vehicles involved in the crash, retrieve data from the event data recorder in Hancock's vehicle, conduct physical testing specific to the crash, or use precise measurements of the crash damage. Cutliff also contends that the data Dr. Peles relied on in reaching his conclusions was deficient because it consisted only of poor quality, black and white photos of Cutliff's vehicle and a vehicle repair estimate. We disagree.

**{13}** Dr. Peles reviewed both black and white and color photos of Cutliff's vehicle, a photograph of Hancock's vehicle, deposition testimony, discovery responses, police reports, Cutliff's medical records, Cutliff's notes, and data related to vehicle crashes, dimensions and weight, and stiffness in forming his opinions. Dr. Peles presumed the accident occurred as Cutliff described, and the information he reviewed enabled Dr. Peles to estimate the severity of impact to Cutliff's vehicle. Conceding that the available information was limited, Dr. Peles did not use a precise figure for impact severity but used "figures [that were] the most conservative or the ones that [were] most in [Cutliff's] favor." Dr. Peles also determined the motion of Cutliff's body by assuming the worst possible vehicle damage to ensure that he estimated impact at the most severe level. Dr. Peles thus addressed the limitations of the data by assuming the worst damage and most severe impact possible in estimating vehicle damage and the severity of the impact. Accordingly, we cannot conclude that the district court abused its discretion in determining that Cutliff's complaints about the adequacy of the data Dr. Peles relied on went to the weight of the evidence and could be addressed in cross-examination. *See Acosta*, 2016-NMSC-012, ¶ 28 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (internal quotation marks and citation omitted)). In sum, we cannot say that Cutliff's unreliability argument supports the conclusion that the district court abused its discretion in denying Cutliff's motion to exclude Dr. Peles' testimony.

### 3. Dr. Peles' Testimony Did Not Exceed the Scope of His Expertise as Biomechanical Engineering Expert

**{14}** Cutliff claims that Dr. Peles gave opinion testimony on medical causation and therefore testified outside the scope of his expertise as a biomechanical engineer. Nonmedical experts cannot offer an opinion as to medical causation. *See Baerwald*, 1997-NMCA-002, ¶ 12; *Woods v. Brumlop*, 1962-NMSC-133, ¶ 15, 71 N.M. 221, 377 P.2d 520 (noting that the cause of a medical condition "lies in a field of knowledge in which only a medical expert can give a competent opinion").

**{15}**     This Court held in *Baerwald* that the district court did not abuse its discretion in determining that an expert witness with a graduate degree in engineering and practice in the field was qualified to testify as an expert in biomechanics in a case involving a motor vehicle collision, and "possessed knowledge and experience that would assist the jury in understanding the biomechanical aspects of [the] case." 1997-NMCA-002, ¶ 10 (citing Rule 11-702). We characterized as "proper testimony" the expert's testimony "on the amount of force exerted on the human body by the accident expressed in terms of G-forces" based on "his study of biomechanics and engineering" and his extrapolation of information "based on pictures of the vehicles and the amount of damage done by the accident." *Id.* ¶ 11. And we concluded that the expert's trial testimony, which included an opinion as to whether the collision at issue was capable of producing an injury of the type claimed by the plaintiff was limited to "his area of expertise, that is, the effects of forces on the human body[.]" *Id.* ¶¶ 15, 18. In concluding that the district court did not abuse its discretion in determining that the witness "was qualified to testify as an expert in biomechanics," we cited cases from our Supreme Court noting the district court's "wide discretion to determine whether [a] witness is qualified to testify as an expert" and that "no set criteria can be laid down to test [the] qualifications of [an] expert." *Id.* ¶ 10.

**{16}**     Like the expert in *Baerwald*, Dr. Peles limited his opinions to his expertise in biomechanical engineering. *Id.* ¶¶ 16, 17. He readily conceded that he was not qualified to offer an opinion on medical causation. Instead, he opined, based on the assumption that the accident resulted in the most severe level of impact, that it is unlikely that Cutliff would have sustained a concussion or low back injury. When asked on cross-examination about his statement that there is "no mechanism . . . for a head injury or a low back injury," Dr. Peles responded, "We talked in my deposition about degeneration in the low back. That's a likely candidate for that." Cutliff's counsel followed up asking Dr. Peles whether he was "offering the jury an opinion that Mr. Cutliff has degenerative back disease?" to which Peles answered, "Well, it's clear from his medical records. I'm not diagnosing him, but he clearly does." To the extent any testimony given by Dr. Peles could have crossed the threshold into impermissible medical testimony, it would have been during cross-examination and, therefore, error invited by Cutliff. *See State ex rel. State Eng'r v. United States*, 2018-NMCA-053, ¶ 36, 425 P.3d 723 ("It is well established that a party may not invite error and then proceed to complain about it on appeal." (internal quotation marks and citation omitted)), *cert. granted*, 2018-NMCERT-___ (Nos. S-1-SC-37068, S-1-SC-37100, Aug. 13, 2018); *see also State v. Anaya*, 2012-NMCA-094, ¶ 36, 287 P.3d 956 (stating that "[a] party cannot preserve an argument for error regarding the admission of evidence that the party introduced").

**{17}**     Cutliff also argues that Vis-Com's attorney elicited impermissible testimony when Dr. Peles answered "no" when asked on redirect, "Would you have any reason to dispute Dr. Allen's testimony that this accident caused no more than a neck strain?" Given Dr. Peles' prior testimony and repeated acknowledgement that he was not giving a medical diagnosis, we do not see how this answer shows that Dr. Peles' testimony exceeded the bounds of his expertise in biomechanical engineering. We cannot say that Cutliff's arguments establish that the district court abused its discretion in allowing Dr. Peles' testimony.

**B. Exclusion of Medical Records**

**{18}** Cutliff argues that the district court abused its discretion by refusing to admit his medical records through a non-treating physician. Cutliff contends the medical records were authenticated pursuant to Rule 11-901 NMRA and were admissible under the business records and residual exceptions to the hearsay rule.[2] *See* Rule 11-803(6) NMRA; Rule 11-807 NMRA. Alternatively, he claims the records were admissible because Vis-Com used them to question other witnesses. The district court rejected these arguments, concluding that the records could potentially be admissible under the business records exception to the hearsay rule but that Cutliff failed to lay a proper foundation. We review the district court's decision to admit or exclude evidence for an abuse of discretion. *See State v. Jackson*, 2018-NMCA-066, ¶ 13, 429 P.3d 674.

**{19}** To authenticate the medical records, Cutliff was required to show "that the item is what [he] claims it is." Rule 11-901(A). This requirement is satisfied by "the testimony of a witness who knows that the documents in fact came from the legal custodian of the document[s]." *Spear v. McDermott*, 1996-NMCA-048, ¶ 13, 121 N.M. 609, 916 P.2d 228. Cutliff does not identify where in the record he introduced such testimony, an affidavit, or point to other evidence authenticating the medical records.

**{20}** Even if Cutliff had met this requirement, he would still need to demonstrate the applicability of a hearsay exception. *See* Rule 11-802 NMRA (providing that hearsay is inadmissible unless an enumerated exception applies). Cutliff did not satisfy the requirements of the business records exception stated in Rule 11-803(6), as he presented no evidence from a records custodian or other witness establishing where the records came from, when they were created, or whether the medical records were kept as a regularly conducted activity of the medical facility. *See* Rule 11-803(6); *see also Padilla v. Hay*, 1995-NMCA-067, ¶ 13, 120 N.M. 220, 900 P.2d 969 (stating that if a party seeks to offer a record under the business record exception, "the proponent must introduce them through a records custodian or other qualified person competent to testify as to their authenticity" (internal quotation marks and citation omitted)).

**{21}** Cutliff also claims that the medical records were trustworthy and thus admissible based on the use of the medical records by Vis-Com during its questioning of Cutliff and two experts. This argument fails. Although the rules of evidence permit experts to rely on hearsay to testify, the hearsay itself is not admissible. *See* Rule 11-703 NMRA; *City of Santa Fe v. Komis*, 1992-NMSC-051, ¶ 25 n.4, 114 N.M. 659, 845 P.2d 753 ("While experts may rely on hearsay under Rule [11-]703, the hearsay itself is not admissible.").

**{22}** To the extent Cutliff relies on Rule 11-807, the residual exception to the hearsay rule, he does not explain why the medical records should have been admitted under this

---

2 Cutliff argues that the medical records would be admissible under Rule 11-803(4), but does not identify where in the record this argument was preserved. See Woolwine v. Furr's, Inc., 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). We decline to address this unpreserved argument.

rule, and we decline to consider it. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 (stating that we will not "review an argument that is not adequately developed"); *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). We conclude that the district court did not abuse its discretion in excluding the medical records.

## C.      Motions for Mistrial

**{23}**     Cutliff contends that the district court abused its discretion in denying his two motions for a mistrial, one made during the testimony of Dr. Peles and another made during closing argument. This Court reviews a denial of a motion to declare a mistrial for an abuse of discretion. *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 24, 145 N.M. 350, 198 P.3d 376.

### 1.      Motion for Mistrial During Dr. Peles' Testimony

**{24}**     Vis-Com stipulated to liability prior to trial, leaving the jury to decide only the issues of causation of injuries and damages. During trial, Vis-Com elicited testimony from Dr. Peles that the damage to Cutliff's vehicle was consistent with Cutliff having struck the vehicle in front of him before he was rear-ended by Hancock's vehicle. The district court denied Cutliff's motion for a mistrial but sustained his objection and instructed the jury to disregard this testimony.

**{25}**     Cutliff contends that Vis-Com intentionally elicited this testimony at trial, in violation of the stipulation to liability, to cast blame on Cutliff for causing the crash. Cutliff argues that this testimony was impermissible because it had the potential to interject comparative fault into the minds of the jurors, which could have had an impact on the final damage award. We are unpersuaded. The district court instructed the jury to disregard this testimony, and this Court presumes that the jury understood and complied with the instruction. *See Vigil v. Miners Colfax Med. Ctr.*, 1994-NMCA-054, ¶ 22, 117 N.M. 665, 875 P.2d 1096 ("There is a presumption that the jury understood and complied with the court's instructions."). "It has long been the rule in this jurisdiction that unless it is clear that prejudice resulted because of evidence erroneously admitted, striking or instructing the jury to disregard it will cure the error and avoid reversal." *Apodaca v. Miller*, 1968-NMSC-086, ¶ 21, 79 N.M. 160, 441 P.2d 200; *see also id.* ("Although we fully appreciate the argument that testimony once given cannot be erased from the minds of the jury, in our view it would make jury trials doubly hazardous if certain testimony, once admitted, could not be withdrawn by an instruction to this effect."). We therefore hold that the district court did not abuse its discretion in denying Cutliff's initial motion for a mistrial.

### 2.      Closing Argument

**{26}**     Cutliff next argues that the district court abused its discretion by denying his subsequent motion for a mistrial, made in response to opposing counsel's argument to

the jury that Cutliff failed to admit any medical bills into evidence. Cutliff objected because the parties had stipulated that they would not admit the medical bills into evidence. The district court instructed the jury to disregard the impermissible argument. Again, we are unpersuaded.

**{27}** The district court timely provided a curative jury instruction. Moreover, the district court specifically instructed the jury about the type of damages it could award to Cutliff, an instruction which, at Cutliff's request, did not include damages for medical expenses. Cutliff failed to show that counsel's comment "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 16, 141 N.M. 808, 161 P.3d 853 (internal quotation marks and citation omitted). "We cannot indulge in conjecture or speculation concerning the basis for the jury's award, and must assume that the jury followed" the jury instructions and that the district court's curative instruction remedied any prejudice. *State ex rel. State Highway Comm'n v. Martinez*, 1970-NMSC-062, ¶ 16, 81 N.M. 442, 468 P.2d 413. The district court did not abuse its discretion in denying Cutliff's second motion for a mistrial.

**CONCLUSION**

**{28}** For the foregoing reasons, we affirm.

**{29}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**MEGAN P. DUFFY, Judge**